[Cite as *In re R.M.*, 2024-Ohio-1885.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE R.M. | : | |
| | : | No. 113443 |
| A Minor Child | : | |
| | : | |
| [Appeal by Mr. R.M., Father] | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 16, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-22912192

### *Appearances:*

Dunham Law LLC and Michael P. Dunham, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Father-appellant, Mr. R.M. ("Father"), appeals a judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting permanent custody of his minor child, R.M., to appellee, Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). He claims the following errors:

1. The trial court abused its discretion in denying [Father]'s request for a continuance in violation of his rights to due process under the constitution and laws of the United States and [s]tate of Ohio.

2. There was insufficient evidence to terminate [Father]'s parental rights.

3. The trial court's judgment terminating [Father]'s parental rights was clearly erroneous and against the manifest weight of the evidence.

4. The trial court committed plain error in its evidentiary rulings.

5. [Father] was deprived of his right to effective assistance of counsel.

{¶ 2} We affirm the juvenile court's judgment.

## I. Facts and Procedural History

{¶ 3} Father is the biological father of R.M. On November 29, 2022, CCDCFS filed a complaint alleging that R.M. was abused and dependent and requesting a dispositional order granting temporary custody of the child to CCDCFS because she and her mother ("Mother") tested positive for cocaine when R.M. was born. The court granted emergency dispositional custody of R.M. to CCDCFS on November 30, 2022. Thereafter, the agency filed an amended complaint requesting temporary custody. Father admitted the allegations in the complaint, and the court placed the child in the temporary custody of the agency.

{¶ 4} In July 2023, CCDCFS filed a motion to modify temporary custody to permanent custody. Thereafter, Father filed a motion for legal custody, and the juvenile court conducted a trial on the motions in November 2023.

{¶ 5} Maya Woodward ("Woodward"), an extended social-service worker with CCDCFS, testified at trial that she was assigned to R.M.'s case in November

2022, when R.M. came into agency custody. (Tr. 9.) The agency developed case plans for both parents with the goal of reunification. Woodward testified that Mother was offered services for substance abuse, mental-health issues, and to assist her in obtaining housing. Mother did not engage in any of the services, and she is not a party to this appeal. (Tr. 15-19.)

{¶ 6} Father's case plan required him to resolve his substance abuse and parenting issues. (Tr. 19.) Father tested positive for cocaine and was referred to New Visions for substance-abuse treatment. Woodward testified that Father was discharged from New Visions because "he was still in denial." (Tr. 20.) The agency referred Father to another program known as "CATS." (Tr. 22.) Father initially engaged in the CATS program, but he was again discharged because he tested positive for cocaine and alcohol. (Tr. 22.) Woodward explained that Father needed intensive inpatient treatment, but he was unwilling to undergo such treatment because he did not want to lose his job and his home. (Tr. 20.) Father also never admitted that he used illicit substances despite having tested positive for them. (Tr. 23.)

{¶ 7} Father completed parenting services at Beech Brook, but he failed to demonstrate any benefit from those services. Woodward observed that "he still seems very unsure, not very confident in his skills through parenting" during his visits with R.M. Woodward further stated that although Father appears "excited" to be at visitation, "he does not really engage unless mom is there." (Tr. 24.)

{¶ 8} The agency attempted to identify an appropriate relative for placement of the child, but they were unable to find a suitable relative. R.M. lived with her maternal aunt and her partner from March 2023 until July 2023, but they were unable and unwilling to care for her any longer. (Tr. 26.) R.M.'s maternal grandmother also expressed interest in taking custody of R.M., but she did not want custody until she obtained a foster license. When asked why she would not take the child until she obtained a foster license, Woodward explained, "She wants the money." (Tr. 28.)

{¶ 9} On cross-examination, Woodward acknowledged that Father attended weekly visitation, but she again stated that Mother is the primary caregiver during the visits. (Tr. 32.) Woodward stated:

> He's more in the background during visitation. Mom changes her diaper, puts her in the car seat. And he is very — he'll hold her, laugh and play with her, but it's more * * * he's never changed her diaper during a visit, he carries her to the car. He's fed her, but then mom will finish feeding her. So it's not a long period of time that he cares for her.

(Tr. 32.) Woodward further stated that R.M.'s maternal grandmother is still interested in taking custody of R.M. if she receives financial assistance. (Tr. 30, 33.)

{¶ 10} Woodward attempted to visit Father's home twice, but she was unable to enter the home either time. On the first visit, Mother's older daughter happened to be present and informed Woodward that she was unable to open the door. On the second visit, there was no answer. (Tr. 32.)

{¶ 11} At the time of the November 2023 trial, R.M. had been living with a foster family since July 2023, and the family was interested in adopting R.M.

(Tr. 26.) The foster family has one biological child and one other foster child. The agency made regular visits to the foster home and found it to be a safe and stable home. (Tr. 26.)

{¶ 12} The guardian ad litem, Mark Novak ("the GAL"), submitted a report recommending an order granting permanent custody of R.M. to the agency. The GAL report states, in relevant part:

> Guardian recommends that the Court grant the Agency's motion for permanent custody of Ward. While Guardian does not doubt that either parent loves or has a bond with Ward, it is in the Ward's best interest to have a stable and permanent future. Unfortunately, neither Mother nor Father have made sufficient progress under their Case Plans in the past eleven (11) months. This failure indicates that neither parent has made the necessary commitment to strengthening their parenting skills so as to be reasonable parenting options for Ward in the foreseeable future.

The GAL stated that he had not heard any evidence during the trial that changed his opinion or recommendation. (Tr. 35.)

{¶ 13} After hearing the evidence and considering the GAL's report, the juvenile court denied Father's motion for legal custody and granted permanent custody of R.M. to the agency. The court found, by clear and convincing evidence, that the child could not, or should not, be placed with either parent within a reasonable period of time. The court also found, by clear and convincing evidence, that it was in the best interests of the child to be placed in the permanent custody of CCDCFS.

{¶ 14} Father now appeals the juvenile court's judgment, raising five assignments of error, which we discuss out of order or together where appropriate.

## II. Law and Analysis

### A. Continuance

{¶ 15} In the first assignment of error, Father argues the trial court erred in failing to grant a continuance of the trial when Father was absent. He contends that by proceeding with the trial in his absence, the juvenile court violated his right to due process.

{¶ 16} Father contends that his trial counsel joined Mother's motion for continuance at the start of the trial proceedings. The trial court asked the parties if there were any motions to be heard before starting the trial, and Father's counsel replied that he had not had any contact with his client since April, seven months earlier. (Tr. 5.) Thereafter, Mother's counsel explicitly requested a continuance because Mother was also absent from the trial proceedings, and the court denied the motion.

{¶ 17} CCDCFS argues Father waived any argument regarding the denial of a continuance because he never expressly requested a continuance. We find that counsel's statement that his client was absent in response to the court's inquiry about any motions constituted an implicit request for a continuance such that the issue was not waived.

{¶ 18} The decision to grant or deny a motion for a continuance rests in the sound discretion of the trial court. *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981). A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority.

*Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). An abuse of discretion also implies a decision that is unreasonable, arbitrary, or unconscionable. *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 13. When applying the abuse-of-discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

{¶ 19} The right to parent one's children is a fundamental right protected by the Due Process Clause of the United States and Ohio Constitutions. *In re M.W.*, 8th Dist. Cuyahoga No. 103705, 2016-Ohio-2948, ¶ 9. A fundamental requirement of due process is notice and an opportunity to be heard. *Id.*

{¶ 20} However, a parent's right to be present at a permanent custody hearing is not absolute. *Id.* at ¶ 10, citing *In re C.G.*, 9th Dist. Summit No. 26506, 2012-Ohio-5999, ¶ 19. Although courts must ensure that due process is provided in parental-termination proceedings, "a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.). Any potential prejudice to a party denied a continuance is weighed

against a trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." *Unger* at 67. Furthermore, R.C. 2151.414(A)(2) requires that a juvenile court hold a hearing on a public children services agency's motion for permanent custody no later than 120 days after the agency files a motion for permanent custody, though a reasonable continuance may be granted "for good cause shown."

{¶ 21} In *Unger*, the Ohio Supreme Court noted that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67. In *Unger*, the court identified certain factors a court should consider in evaluating a motion for a continuance. These factors include

> the length of the delay requested; whether other continuances have been requested and received, the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Id*. at 67-68.

{¶ 22} Father argues the court should have granted him a continuance because he had not filed any prior motions for continuance, and he was never notified of the trial date. He asserts "[t]he only notice father got was through regular mail, and therefore, there is no proof that he actually got notice." (Appellant's brief

p. 10-11.) Father further asserts that the court could have granted a short continuance to allow him to be served by certified mail.

{¶ 23} R.C. 2151.414(A)(1) sets forth the notice requirements for a permanent custody motion and trial. It states that "the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with [R.C. 2151.29], to all parties to the action and to the child's guardian ad litem." However, Father was properly served in accordance with Juv.R. 20(B) and Civ.R. 5(B). Juv.R. 20(B) states:

> Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service is ordered by the court upon the party. Service upon the attorney or upon the party, and proof of service, shall be made in the manner provided in Civ.R. 5(B).

Father was represented by an attorney. Therefore, service had to be made in the manner provided in Civ.R. 5(B). Civ.R. 5(B)(1) states that "[i]f a party is represented by an attorney, service under this rule shall be made on the attorney unless the court orders service on the party."

{¶ 24} Notice of the trial was served on Father's lawyer by electronic mail. Therefore, service was made in accordance with the applicable rules. However, Civ.R. 5(B)(2)(c) further provides that where a party is not represented by counsel, service may be accomplished by "mailing it to the person's last known address by United States mail, in which service is complete upon mailing." In this case, notice of the trial was served on Father's counsel and on Father, himself, at his last known

address. Therefore, despite Father's claims to the contrary, Father was properly served with notice of the trial.

{¶ 25} Furthermore, because Father did not expressly ask for a continuance, he never articulated a reason for needing a continuance other than his claim on appeal that he was not served with notice of the trial. We, therefore, cannot say that the trial court abused its discretion in deciding not to continue the trial.

{¶ 26} The first assignment of error is overruled.

## B. Evidentiary Rulings

{¶ 27} In the fourth assignment of error, Father argues the trial court committed plain error in its evidentiary rulings. He contends the court erred by not administering an oath to the GAL before hearing his testimony and by allowing Woodward to provide hearsay testimony.

{¶ 28} Father's trial counsel did not object to any of these rulings. We, therefore, review them for plain error. *In re De.D.*, 8th Dist. Cuyahoga No. 108760, 2020-Ohio-906, ¶ 13 (holding that failure to object to an issue in the lower court forfeits a party's right to challenge that issue on appeal absent plain error). Plain error exists only when it can be determined that but for the error, the outcome of the trial would have been different. *In re S.F.*, 8th Dist. Cuyahoga No. 112327, 2023-Ohio-1900, ¶ 15, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 19, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

{¶ 29} Pursuant to Juv.R. 34(I), "[t]he Rules of Evidence shall apply in hearings on motions for permanent custody." Juv.R. 34(I). *See also In re*

*Washington*, 143 Ohio App.3d 576, 581, 758 N.E.2d 724 (8th Dist.2001). We, therefore, review the trial court's rulings to determine if they comport with the Ohio Rules of Evidence.

{¶ 30} However, we also review a trial court's decision regarding the admissibility of evidence for an abuse of discretion. *State v. Apanovitch*, 33 Ohio St.3d 19, 25, 514 N.E.2d 394 (1987). As previously stated, a court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, at ¶ 35.

### 1. GAL Evidence

{¶ 31} Father argues the juvenile court erred by not administering an oath to the GAL before receiving his oral recommendation at trial. However, this court has rejected claims of plain error based on a trial court's failure to swear in a witness prior to receiving the witness's testimony. *See In re R.S.*, 8th Dist. Cuyahoga No. 110210, 2021-Ohio-2271, ¶ 46-48, citing *E. Cleveland v. Harris*, 8th Dist. Cuyahoga No. 109404, 2021-Ohio-952.

> The Supreme Court explained in *Stores Realty* [*Co. v. Cleveland*, 41 Ohio St.2d 41, 322 N.E.2d 629 (1975)] that it "is well-established that a party may not, upon appeal, raise a claim that the oath of a witness was omitted or defective, unless objection thereto was raised at trial. If no objection was raised, the error is considered to be waived." *Id*. at 43. "This is because the failure to administer an oath can easily be corrected at the time; an attorney may not fail to object and then cite the lack of an oath as error." *State v. Norman*, 137 Ohio App.3d 184, 198, 738 N.E.2d 403 (8th Dist.1999*); see also State v. Davis*, 8th Dist. Cuyahoga No. 105299, 2017-Ohio-8873, ¶ 19 (defendant was not entitled to a new hearing due to unsworn testimony because the defendant did not object

to the unsworn testimony and failed to show that the outcome of the proceeding would have been different but for the error).

*Harris* at ¶ 19. *See also In re G.W.*, 1st Dist. Hamilton Nos. C-190388 and C-190390, 2020-Ohio-3355, ¶ 21 ("[T]he mere failure to have a witness sworn is error that may be waived, and thus, unsworn testimony is competent evidence where the opposing counsel neither requests that the witness be sworn nor makes a timely objection to the testimony.").

{¶ 32} Father's trial counsel failed to object to the GAL's unsworn statement. He, therefore, forfeited the error for appeal.

## 2. Hearsay

{¶ 33} Father next contends the trial court erred by allowing Woodward to provide hearsay testimony of statements made by R.M.'s maternal aunt and grandmother. He objects to (1) Woodward's testimony that R.M.'s grandmother refused to take custody of R.M. until she obtained a foster parent license so she could be compensated, and (2) Woodward's testimony that R.M.'s aunt was unable to take care of R.M.

{¶ 34} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "If either element is missing — (1) a statement or (2) offered for its truth — the testimony is not hearsay." *State v. Washington*, 8th Dist. Cuyahoga No. 112914, 2024-Ohio-1056, ¶ 18, citing *State v. Holt*, 9th Dist. Lorain No. 97CA006985, 1999 Ohio App. LEXIS 4149, 8 (Sept. 8, 1996).

{¶ 35} Woodward's statements regarding R.M.'s maternal aunt and grandmother were not offered for the truth asserted therein; they were offered to explain why R.M. was placed in a foster home instead of with blood relatives. The testimony is akin to out-of-court statements made by police to explain their conduct during an investigation. These out-of-court statements are routinely admitted as nonhearsay if (1) the explained conduct is "relevant, equivocal, and contemporaneous with the statements; (2) the probative value of statements [is not] substantially outweighed by the danger of unfair prejudice; and (3) the statements cannot connect the accused with the crime charged." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 27.

{¶ 36} Woodward's testimony explained why R.M. did not remain in the maternal aunt's custody and why she was not placed with her maternal grandmother. Therefore, the testimony was relevant to the permanent-custody determination. Moreover, the probative value of the testimony is not outweighed by any potential prejudice. There was nothing prejudicial to Father in the statements. And because this is not a criminal matter, the statements do not connect Father to any crimes. There was no abuse of discretion in the admission of this testimony.

{¶ 37} Accordingly, the fourth assignment of error is overruled.

### C. Permanent Custody

{¶ 38} In the second and third assignments of error, Father argues the trial court's decision to terminate Father's parental rights and grant permanent custody

of R.M. to the agency is not supported by sufficient evidence and is against the manifest weight of the evidence.

{¶ 39} A parent has a "fundamental liberty interest * * * in the care, custody, and management of [his or her child]." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). The termination of parental rights is regarded as "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 8th Dist. Cuyahoga No. 98546, 2013-Ohio-1704, ¶ 66, quoting *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14. Consequently, parents "'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991).

{¶ 40} Nevertheless, a parent's right to the care and custody of his or her child is not absolute. *In re L.G.*, 8th Dist. Cuyahoga No. 110789, 2022-Ohio-529, ¶ 49. "'[T]he natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the polestar or controlling principal to be observed.'" *In re L.D.*, 2017-Ohio-1037, 86 N.E.3d 1012, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 41} Ohio statutes governing child custody and protection "'appropriately reflect the need to balance * * * [the] parents' * * * interest in the custody, care, nurturing, and rearing of their own children, and the state's parens patriae interest in providing for the security and welfare of children under its jurisdiction[.]'" *In re*

*P.S.*, 8th Dist. Cuyahoga No. 111817, 2023-Ohio-144, ¶ 30, quoting *In re Thompson*, 10th Dist. Franklin No. 00AP-1358, 2001 Ohio App. LEXIS 1890 (Apr. 26, 2001).

{¶ 42} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, 115 N.E.3d 813, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 43} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then analyze whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency pursuant to R.C. 2151.414(D).

{¶ 44} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28, quoting *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶ 45} Given that R.C. 2151.414 requires that a juvenile court find by clear and convincing evidence that the statutory requirements are met, the Ohio Supreme Court recently stated that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 173 Ohio St.3d 359, 2023-Ohio-4703, 230 N.E.3d 1123, ¶ 11.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 Ohio B. 408, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id*. at ¶ 14.

{¶ 46} Although sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. *In re P.S.*, 8th Dist. Cuyahoga No. 111817, 2023-Ohio-144, ¶ 30, citing *In re C.N.*, 10th Dist. Franklin No. 15AP-67, 2015-Ohio-2546, ¶ 9, citing *State v. Howze*, 10th Dist. Franklin No. 13AP-386, 2013-Ohio-4800, ¶ 10.

### 1. First Prong — R.C. 2151.414(B)

{¶ 47} With respect to the first prong of the permanent-custody analysis, R.M. was not abandoned or orphaned, and the juvenile court found that she could not be placed with either parent within a reasonable time or should not be placed with either parent.

{¶ 48} When assessing whether a child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents under R.C. 2151.414(B)(1)(a), a juvenile court must consider the factors outlined in R.C. 2151.414(E). *In re A.V.*, 8th Dist. Cuyahoga No. 101391, 2014-Ohio-5348, ¶ 58; *In re B.P.*, 8th Dist. Cuyahoga Nos. 107732 and 107735, 2019-Ohio-2919, ¶ 13. A juvenile court is only required to find that one of these factors is met in order to properly find that a child cannot or should not be placed with a parent. *In re Ca.T.,* 8th Dist. Cuyahoga No. 108969, 2020-Ohio-579, ¶ 27, citing *In re V.C.*, 8th Dist. Cuyahoga Nos. 102903, 103061, and 103367, 2015-Ohio-4991, ¶ 42.

{¶ 49} In this case, the juvenile court found R.M. could not be placed with either parent within a reasonable time or should not be placed with either parent

pursuant to the factors outlined in R.C. 2151.414(E)(1), (2), (4) and (11). These provisions provide as follows:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

> (2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

> * * *

> (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

> * * *

> (11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶ 50} With respect to the juvenile court's finding under R.C. 2151.414(E)(1), R.M. was removed from both parents' custody due to parenting and substance-abuse issues. She was also removed from Mother's custody due to Mother's mental illness and her inability to provide housing.

{¶ 51} Woodward testified that Father failed to address the substance abuse portion of his case plan. He enrolled in substance-abuse treatment, but he was discharged from two programs after testing positive for cocaine, and he refused to engage in any subsequently referred programs. Father also failed to submit to drug screens as requested by the agency. Although Father completed parenting services, Woodward testified that he failed to demonstrate any benefit from the program. She stated that Father "still seems very unsure, not very confident in his skills through parenting" during visits with R.M. Therefore, both Father's parenting and substance-abuse issues remained unresolved at the time of trial.

{¶ 52} Woodward similarly testified that Mother failed to engage at all with any aspect of her case plan, which included substance abuse and mental health treatment. Mother also failed to demonstrate that she could provide stable housing and other basic needs. Therefore, the trial court's finding that R.M.'s parents failed to remedy the conditions that initially caused her removal and that R.M. could not or should not be placed with either parent within a reasonable time is supported by competent, credible evidence.

{¶ 53} The trial court found, pursuant to R.C. 2151.414(E)(2), that both parents suffered from chemical dependency that was so severe that neither parent

was able to provide an adequate permanent home for R.M. Again, Woodward testified that both parents failed to comply with the substance-abuse component of their case plans, and Father was discharged from drug treatment because he twice tested positive for cocaine. As a result of his positive drug tests, Father was required to submit to random drug screens, but he failed to comply with agency requests. Father's substance abuse remained a concern at the time of the trial. (Tr. 22-23.)

{¶ 54} The trial court found, pursuant to R.C. 2151.414(E)(4), that both parents showed a lack of commitment toward R.M. by demonstrating an unwillingness to provide an adequate permanent home for her. Woodward testified that neither parent resolved their substance-abuse issues. And, neither parent appeared for trial. In fact, counsel for both Mother and Father informed the court that they had been unable to contact their clients for many months before trial. Therefore, the trial court's finding that both parents showed a lack of commitment is supported by competent, credible evidence and is not against the manifest weight of the evidence.

{¶ 55} The trial court's finding under R.C. 2151.414(E)(11) pertained only to Mother. The juvenile court found that Mother had previously had her parental rights terminated with respect to her three older children. Judgment entries from the older children's cases demonstrating that the agency was granted permanent custody of the children were entered into evidence. The GAL also confirmed that Mother's parental rights had previously been terminated. Therefore, the court's

finding that Mother's parental rights had previously been terminated is supported by competent, credible evidence.

{¶ 56} The juvenile court's findings under R.C. 2151.414(E) mandated the determination that R.M. could not, or should not, be returned to either parent within a reasonable time. *In re B.B.C.,* 8th Dist. Cuyahoga No. 113213, 2024-Ohio-588, ¶ 20 ("Pursuant to R.C. 2151.414(E), if the court determines, by clear and convincing evidence, that one or more of the (E)(1)-(16) factors exist, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent."). Therefore, the first prong of the permanent-custody analysis was supported by competent, credible evidence and was not against the manifest weight of the evidence.

## 2. Second Prong: Best Interests of the Child

{¶ 57} Having determined that competent and credible evidence supports the juvenile court's finding that the child could not or should not be returned to either parent within a reasonable time, we now turn to the second prong of our analysis, which requires the court to determine, by clear and convincing evidence, whether the order granting permanent custody of R.M. to the agency pursuant to R.C. 2151.414(D) is in the best interests of the child.

{¶ 58} In determining the best interests of the child, a juvenile court may apply one of two different tests set forth in R.C. 2151.414(D)(1) and (D)(2). *In re A.F.*, 8th Dist. Cuyahoga No. 112918, 2023-Ohio-4423, ¶ 41, citing *In re S.C.*, 10th

Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. Franklin No. 18AP-834, 2019-Ohio-1619, ¶ 39.

{¶ 59} In determining the best interests of the child under R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 60} Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent-custody determination, "there is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 8th Dist. Cuyahoga No. 102350, 2015-Ohio-2410, ¶ 30.

{¶ 61} Alternatively, the court may apply the second test set forth in R.C. 2151.414(D)(2), which provides:

If all of the following apply, permanent custody is in the best interest of the child, and the court shall commit the child to the permanent custody of a public children services agency or private child placing agency:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

If all the factors enumerated under R.C. 2151.414(D)(2) are applicable, permanent custody is per se in the child's best interest, and the juvenile court must commit the child to the permanent custody of the agency. *In re G.A.*, 8th Dist. Cuyahoga No. 108932, 2020-Ohio-2949, ¶ 61, citing *In re J.R.*, 10th Dist. Franklin No. 17AP-698, 2018-Ohio-1474, ¶ 41.

{¶ 62} The juvenile court in this case made the best-interest-of-the-child determination pursuant to R.C. 2151.414(D)(1). Considering R.M.'s interrelationships with her parents, relatives, and foster caregivers, the court noted that R.M. had been in the same foster home since removal except for a short period of time between March 2023 and July 2023, when she was with her maternal aunt. Unfortunately, the maternal aunt was unable to care for the child, and she was

returned to the foster home where her needs were being met. Although both parents love R.M., the evidence showed that they failed to demonstrate a commitment to her by failing to complete their case plans and by failing to appear for the trial. The juvenile court noted, and the testimony confirmed, that the foster family is willing to adopt R.M. Adoption would satisfy the child's need for a secure permanent placement as contemplated in R.C. 2151.414(D)(1)(d). Therefore, there is competent, credible evidence to support the court's findings under R.C. 2151.414(D)(1)(a) and 2151.414(D)(1)(d), and these factors weigh in favor of permanent custody.

{¶ 63} Due to R.M.'s young age, her wishes were expressed through the GAL. The GAL indicated that permanent custody is in R.M.'s best interests. The GAL stated the recommendation on the record and in a written report wherein he reiterated that R.M.'s parents have failed to remedy the conditions that initially caused her removal. He also stated that R.M. is thriving in her foster home. Therefore, the court's finding under R.C. 2151.414(D)(1)(b) is supported by competent, credible evidence.

{¶ 64} R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e). "Consideration is all the statute requires." *In re A.M.*, 166 Ohio St.3d 127, 2020-Ohio-5102, 184 N.E.3d 1, ¶ 31. And, as previously stated, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interests. The juvenile courts' judgment entry granting permanent

custody of R.M. to the agency demonstrates that the court considered the factors outlined in R.C. 2151.414(D)(1), and the court's findings are supported by competent, credible evidence.

{¶ 65} Therefore, the second and third assignments of error are overruled.

## D. Ineffective Assistance of Counsel

{¶ 66} In the fifth assignment of error, Father argues he received ineffective assistance of counsel because his trial counsel (1) failed to object to hearsay evidence, (2) failed to inform him of the trial date, (3) failed to present any evidence in his defense, and (4) failed to cross-examine the GAL. Father further asserts that the cumulative effect of counsel's omissions prejudiced him.

{¶ 67} An indigent parent is entitled to the effective assistance of appointed counsel when the state seeks to terminate his or her parental rights. *In re A.C.*, 8th Dist. Cuyahoga No. 99057, 2013-Ohio-1802, ¶ 45. "'[T]he test for ineffective assistance of counsel used in criminal cases is equally applicable in actions seeking to force the permanent, involuntary termination of parental rights.'" *Id.*, quoting *In re P.M.*, 179 Ohio App.3d 413, 2008-Ohio-6041, 902 N.E.2d 74, ¶ 15 (2d Dist.).

{¶ 68} To establish ineffective assistance of counsel, Father must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation, and (2) that he was prejudiced by that performance. Prejudice is established when the defendant demonstrates a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 69} As previously discussed, Woodward's testimony regarding the out-of-court statements of R.M.'s maternal aunt and grandmother were not hearsay because, rather than being offered for the truth of the matter asserted, they were offered to explain why R.M. was not placed with a family member. Therefore, even if counsel had objected to the evidence, the evidence would have been properly admitted into evidence.

{¶ 70} Regarding Father's claim that his trial counsel failed to communicate the trial date and time to him, there is no evidence that counsel was in any way deficient. Father had not contacted his lawyer for seven months prior to the trial. We, therefore, cannot blame counsel for the lack of communication.

{¶ 71} Father also argues his trial counsel was ineffective because he failed to cross-examine the GAL. However, he fails to explain how the cross-examination would have changed the outcome of the trial. Father also offers no evidence or argument as to what evidence or witnesses could have been presented in his defense. Father, therefore, cannot establish a claim for ineffective assistance of counsel.

{¶ 72} The fifth assignment of error is overruled.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR