[Cite as *In re M.C.*, 2026-Ohio-1051.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE M.C. | : | |
| | : | No. 115453 |
| A Minor Child | : | |
| | : | |
| [Appeal by M.J., Mother] | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 26, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD22910402

### *Appearances:*

M.J., *pro se*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Appellant M.J. ("Mother") appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that granted permanent custody of her minor child ("M.C.") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "agency") and terminated her parental rights.

{¶ 2} Mother raises four assignments of error:

1. The custody judgment relies on a tainted abuse adjudication obtained through procedural irregularities, withheld evidence, and altered documentation.

2. The trial court violated [Mother]'s due process rights by restricting cross-examination, refusing to hear pro se motions, and preventing development of a complete record.

3. The Agency's placement reporting is inconsistent with its own records and appears to have been altered.

4. The trial court's best-interest finding is against the manifest weight of the evidence.

{¶ 3} Following a careful review of the record and pertinent case law, we find that the juvenile court did not err in terminating Mother's parental rights and granting permanent custody to the agency. We further find Mother has failed to demonstrate any error that: 1) the award of temporary custody to CCDCFS was based upon unauthenticated or altered documents, 2) Mother's due-process rights were violated by the juvenile court's limitation of her cross-examination and juvenile court's refusal to hear her pro se motions, and 3) juvenile court relied on inaccurate records maintained by CCDCFS. The judgment of the juvenile court is affirmed.

## I. Factual and Procedural History

{¶ 4} In October 2022, CCDCFS filed a complaint requesting temporary custody of M.C. alleging that she was abused and dependent based upon the allegation that Mother had chained M.C. to her bed at night. On the same day, CCDCFS filed a motion requesting emergency temporary custody of M.C. Five days later, the juvenile court granted emergency temporary custody to CCDCFS.

{¶ 5} The juvenile court held an adjudication and disposition hearing on CCDCFS's complaint. The magistrate issued a decision adjudicating M.C. abused and dependent and awarding CCDCFS temporary custody. Mother filed objections to the magistrate's decision. The juvenile court overruled Mother's objections and adopted the magistrate's decision. The juvenile court found M.C. to be abused and dependent and ordered her placed in the temporary custody of CCDCFS.

{¶ 6} Mother appealed the decision awarding temporary custody to the agency, which was affirmed by this court. *In re M.C.*, 2023-Ohio-3979, ¶ 39 (8th Dist.).

{¶ 7} In December 2023, CCDCFS filed a motion to modify temporary custody to permanent custody, based upon the claim that Mother had failed to successfully complete the case plan. Trial commenced in August 2024, but ended in a mistrial because Mother discharged her attorney and failed to obtain new counsel. A new trial, at which time Mother represented herself with standby counsel, was held in February and July 2025.

{¶ 8} Testimony adduced at trial from a case worker for CCDCFS, Carol Beck ("Beck"), established that M.C. was initially placed in the emergency custody of CCDCFS in May of 2020. (Tr. 98.)[1] The juvenile court, at the commencement of trial, informed Mother that it was only concerned with the permanent custody of M.C. and any other issues, such as negligence on the part of CCDCFS, would have to

---

[1] The cited transcript pages refer to the trial on the motion for permanent custody conducted in February and July 2025.

be addressed through other legal proceedings. (Tr. 40.) The testimony of Beck established that M.C. was removed from Mother's custody because of Mother's untreated mental-health issues, that affected her ability to care for M.C., and the constant conflict between Mother and M.C. (Tr. 46.) Beck indicated that a case plan was created for Mother with the goal of reunification of Mother and M.C., Mother's need for mental-health treatment, and the reduction or elimination of the ongoing conflict between Mother and M.C. (Tr. 47-49.) In addition, Mother did not receive any treatment for the diagnosis of schizophrenia nor was CCDCFS able to verify that Mother had received any mental-health treatment. (Tr. 175 and 216.) Beck indicated that both Mother and M.C. were referred to family therapy and did engage in family therapy. (Tr. 47-52.) Testimony from Beck established that although Mother and M.C. were referred for family therapy, the therapy could not continue because of a lack of progress between Mother and M.C. (Tr. 49-53 and 104-105.) Selena Wright, CCDCFS Supervisor of Beck, stated that Mother had not demonstrated substantial compliance with the case plan. (Tr. 383-384.)

{¶ 9} The guardian ad litem ("GAL") for M.C. recommended that M.C. be placed in the permanent custody of CCDCFS. The GAL indicated that Mother had not engaged in any individual counseling. In addition, he noted that during three different family counseling meetings, Mother was very disruptive and any attempt to resolve the conflicts between Mother and M.C. was unsuccessful. The GAL further stated:

So the two case plan objectives that have been on the case for three years, that being mother having a mental-health assessment and treatment and following the recommendations of the assessment, has not taken place.

Whether it's mother's fault or [M.C.]'s fault is not really the point. The point is they continue to argue. They can't get along. They get along for a certain period of time, something happens, and then they don't. And this has been the pattern all the way through the case for three years.

I know the Court participated in the in-camera interview of the child, as did mother — as did [M.C.]'s attorney and myself. And it's very clear, from the testimony here, as well as the in-camera interview, that [M.C.] does not desire to return home.

She's 16 years old. She's going to, in my opinion, continue to get into those types of fights, if she's returned home.

Mother has not complied with case plan services. The risk for the child's return home has not been reduced. It's been three years.

(Tr. 431.)

{¶ 10} Finally, the GAL stated that M.C.'s "best interest is served by the [juvenile] [c]ourt granting permanent custody" to CCDCFS. (Tr. 432.)

{¶ 11} Based on the evidence and testimony presented at trial, the juvenile court issued a decision terminating Mother's parental rights and ordering that M.C. be placed in the permanent custody of CCDCFS.

{¶ 12} Mother now appeals the juvenile court's judgment.

## II. Law and Analysis

{¶ 13} We take our responsibility reviewing the termination of parental rights and the award of permanent custody very seriously. A parent has a "fundamental liberty interest . . . in the care, custody, and management of [his or her child]."

*Santosky v. Kramer*, 455 U.S. 745, 753 (1982). The termination of parental rights is regarded as "'the family law equivalent of the death penalty in a criminal case.'" *In re J.B.*, 2013-Ohio-1704, ¶ 66 (8th Dist.), quoting *In re Hoffman*, 2002-Ohio-5368, ¶ 14. Thus, parents "'must be afforded every procedural and substantive protection the law allows.'" *In re Hayes*, 79 Ohio St.3d 46, 48 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16 (6th Dist. 1991).

{¶ 14} Nevertheless, a parent's right to the care and custody of his or her child is not absolute. *In re L.G.*, 2022-Ohio-529, ¶ 49 (8th Dist.). "'[T]he natural rights of a parent . . . are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

{¶ 15} All children have "'the right, if possible, to parenting from either natural or adoptive parents which provides support, care, discipline, protection and motivation.'" *In re J.B.*, at ¶ 66, quoting *In re Hitchcock*, 120 Ohio App.3d 88, 102 (8th Dist. 1996). When parental rights are terminated, the goal is to create "a more stable life" for dependent children and to "facilitate adoption to foster permanency for children." *In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), citing *In re Howard*, 1986 Ohio App. LEXIS 7860, *5 (5th Dist. Aug. 1, 1986).

{¶ 16} Ohio statutes governing child custody and protection "'appropriately reflect the need to balance . . . [the] parents' . . . interest in the custody, care, nurturing, and rearing of their own children, and the State's parens patriae interest in providing for the security and welfare of children under its jurisdiction[.]'" *In re*

*P.S.*, 2023-Ohio-144, ¶ 26 (8th Dist.), quoting *In re Thompson*, 2001 Ohio App. LEXIS 1890 (10th Dist. Apr. 26, 2001).

### A. First Assignment of Error – Unauthenticated Document

{¶ 17} Mother argues in her first assignment of error that the temporary custody agreement that allowed for the award of temporary custody to CCDCFS on February 12, 2023, constitutes an unauthenticated or altered document.

{¶ 18} Preliminarily, we note that Mother's brief fails to comply with the appellate rules. Mother's argument section in support of her first assignment of error consists of a single paragraph in which she argues that the temporary custody agreement was improperly admitted into evidence during the January 10, 2023 hearing. Mother has failed to cite any portions of the record in her brief or point to any legal authority in support of her argument. *See* App.R. 16(A)(6) and (A)(7).

{¶ 19} It is the duty of Mother, as appellant, to demonstrate her assignment of error through an argument that is supported by citations to legal authority and facts in the record. It is not the function of this court to construct a foundation for Mother's claims; failure to comply with the rules governing practice in the appellate courts is a tactic that is fatal. *Perozeni v. Perozeni*, 2026-Ohio-185, ¶ 14-15 (8th Dist.); *Ohio Edison Co. v. Williams*, 2007-Ohio-5028, ¶ 9 (9th Dist.). Pursuant to App.R. 12(A) and 16(A)(7), an appellate court may disregard an assignment of error if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A). *Id.* at ¶ 10; *see also* App.R. 12(A)(2).

{¶ 20} While we are mindful that Mother has brought this appeal pro se, she is held to the same standard as litigants who are represented by counsel. *See In re D.B.*, 2025-Ohio-1371, ¶ 15 (8th Dist.), citing *State ex rel. Fuller v. Mengel*, 2003-Ohio-6448, ¶ 10. "Furthermore, 'it is not for this court to assume the role of advocate for the pro se litigant.'" *Id.*, quoting *Djurin v. Ginley*, 2023-Ohio-1041, ¶ 13 (8th Dist.). "Because a pro se party is held to the same standards as represented parties, the failure of an unrepresented party to properly present their case for review can lead to arguments not being reviewed at all." Mikiciuk, *What You Don't Know Will Hurt You: Addressing the Inequities of Pro Se Litigation in Ohio Domestic Relations Courts*, 46 U. Dayton L. Rev. 221, 234 (2021), citing *Sparks v. Sparks*, 2011-Ohio-5746, ¶ 10-11 (12th Dist.).

{¶ 21} Moreover, to the extent that Mother's brief contains arguments regarding the propriety of the 2023 dispositional order granting temporary custody to the agency, those arguments are barred by the doctrine of res judicata. *In re A.B.*, 2025-Ohio-4771, ¶ 23 (2d Dist.).

{¶ 22} Mother's first assignment of error is overruled.

## B. Second Assignment of Error – Cross-Examination and Motions

{¶ 23} Mother, through her second assignment of error, argues that her due-process rights were violated because the juvenile court violated her right to cross-examination and further refused to hear pro se motions.

> Evid.R. 611(B) states "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility." "'The limitation of * * * cross-examination lies within the sound discretion of the trial

court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion.'" *Mueller v. Lindes*, 8th Dist. Cuyahoga No. 80522, 2002-Ohio-5465, ¶ 24, quoting *State v. Treesh*, 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749 (2001). Trial judges may impose reasonable limits on cross-examination to prevent harassment, prejudice, confusion of the issues, repetitive testimony, marginally relevant interrogation, or to protect a witness's safety. *La Spisa v. La Spisa*, 8th Dist. Cuyahoga No. 111810, 2023-Ohio-3467, ¶ 135, citing *Mueller v. Lindes*, 8th Dist. Cuyahoga No. 80522, 2002-Ohio-5465.

*Hadjuk v. Rusnak*, 2024-Ohio-339, ¶ 43 (8th Dist.).

{¶ 24} Following a review of the record, we find that the juvenile court did not abuse its discretion in limiting Mother's cross-examination of various witnesses. Mother does not provide any specific instances where she was limited in her cross-examination of witnesses. In addition, the record demonstrates that the juvenile court addressed and denied Mother's pro se motion regarding federal IV-E eligibility, billing issues, and request for production of document/information. (Tr. 40).

{¶ 25} Mother's second assignment of error is overruled.

### C. Third Assignment of Error – Inaccurate Records

{¶ 26} In her third assignment of error, Mother argues that the agency's placement reporting records are not accurate and various entries "suggest post hoc alterations to reconcile billing with Title IV-E rules." Mother argues that the juvenile court relied on CCDCFS's records without resolving material inconsistencies.

{¶ 27} Mother has failed to demonstrate how any purported record inconsistencies in placement records negatively affected or were relevant to the

juvenile court's termination of parental rights. We further find that Mother has failed to demonstrate any "post hoc alterations to reconcile billing with Title IV-E rules" that materially affected the juvenile court's termination-of-parental-rights judgment. Mother's third assignment of error is overruled.

### D. Fourth Assignment of Error — Best-Interest Determination

{¶ 28} In her fourth assignment of error, Mother argues that the trial court's best-interest finding is against the manifest weight of the evidence.

{¶ 29} R.C. 2151.414 provides a two-prong analysis to be applied by a juvenile court in adjudicating a motion for permanent custody. *In re S.C.*, 2018-Ohio-2523, ¶ 20 (8th Dist.), citing R.C. 2151.414(B). The first prong authorizes the juvenile court to grant permanent custody of a child to the public agency if, after a hearing, the juvenile court determines, by clear and convincing evidence, that any of the following factors apply: (a) the child is not abandoned or orphaned, but the child cannot be placed with either parent within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; (d) the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period; or (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state. R.C. 2151.414(B)(1)(a)-(e).

{¶ 30} "Only one of the factors must be present to satisfy the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 2021-Ohio-3821, ¶ 27 (8th Dist.), citing *In re L.W.*, 2017-Ohio-657, ¶ 28 (8th Dist.).

{¶ 31} In accordance with the second prong of R.C. 2151.414, when any one of the above factors exists, the juvenile court must then consider the factors listed in R.C. 2151.414(D) to determine, by clear and convincing evidence, whether it is in the child's best interest to grant permanent custody to the agency pursuant to R.C. 2151.414(D). *In re H.G.*, 2024-Ohio-3408, ¶ 16 (8th Dist.).

{¶ 32} "'Clear and convincing evidence' is evidence that 'will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.'" *In re T.B.*, 2014-Ohio-2051, ¶ 28 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 33} Given that R.C. 2151.414 requires a juvenile court to find by clear and convincing evidence that the statutory requirements are met, the Ohio Supreme Court has held that "the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 11.

{¶ 34} Mother argues that the juvenile court's judgment awarding permanent custody of M.C. to CCDCFS is against the manifest weight of the evidence.

{¶ 35} With regard to the manifest-weight standard of review, the Supreme Court of Ohio has held:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Id.* at ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

### 1. First Prong – R.C. 2151.414(B)

{¶ 36} Pursuant to R.C. 2151.414(B)(1)(a), the juvenile court found by clear and convincing evidence that although M.C. was not abandoned or orphaned, she could not be placed with Mother within a reasonable time or should not be placed with Mother. It also considered M.C.'s custodial history and concluded she had been in custodial placement for 12 or more months of a consecutive 22-month period and, in fact, for over three years. R.C. 2151.414(B)(1)(d).

{¶ 37} In addition, the juvenile court, in the judgment that terminated Mother's parental rights, found that multiple factors under R.C. 2151.414(E) were present that prevented placement with Mother:

"Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." Applies to the Mother. [R.C. 2151.414(E)(1)]

"Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year. . . ." [R.C. 2151.414(E)(2)]

Mother loves child and is concerned for child. But both Mother and child have mental health challenges and severe and ongoing relationship/parenting challenges that have never been adequately addressed or resolved between the two of them despite multiple residential placements and therapists.

*In re: M.C.*, Cuyahoga J.C. No. AD22910402 (July 25, 2025).

{¶ 38} Clear and convincing evidence in the record supports the juvenile court's findings under R.C. 2151.414(B)(1)(a) and 2151.414(B)(1)(d), and Mother does not contest these findings. Accordingly, the first prong of the permanent-custody analysis is satisfied.

### 2. Second Prong – Best Interest of the Child

{¶ 39} The second prong of our review of Mother's termination of her parental rights required the juvenile court to determine, by clear and convincing

evidence, whether granting permanent custody to CCDCFS pursuant to R.C. 2151.414(D) was in the best interest of M.C.

{¶ 40} In determining the best interest of the child under R.C. 2151.414(D)(1), the juvenile court must consider all relevant factors, including but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 41} Although a juvenile court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent-custody determination, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.), citing *In re Moore*, 2000 Ohio App. LEXIS 3958 (8th Dist. Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683 (3d Dist. 1993).

{¶ 42} R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e).

"Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31. And, as previously stated, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest.

{¶ 43} Here, the juvenile court considered the evidence and testimony presented at the hearing, as well as the GAL's report, the wishes of M.C. as expressed through an in camera interview and her GAL, the custodial history of M.C., M.C.'s desire to not participate in family therapy, and M.C.'s need for a legally secure permanent placement and whether that type of placement could be achieved without the grant of permanent custody to CCDCFS. The juvenile court specifically referenced the R.C. 2151.414(D)(1) factors in its decision and further found that M.C.'s return to Mother's home would be contrary to her best interest.

{¶ 44} In her brief, Mother does not provide any specific arguments as to how the juvenile court's consideration of the evidence and best-interest finding were improper.

{¶ 45} We cannot say that the juvenile court lost its way in its resolution of evidentiary conflicts and created a manifest miscarriage of justice. The juvenile court's judgment entry granting permanent custody of M.C. to CCDCFS demonstrates that the juvenile court considered the factors outlined in R.C. 2151.414(D)(1), and the juvenile court's findings are supported by competent, credible evidence.

{¶ 46} The juvenile court's judgment terminating Mother's parental rights and awarding permanent custody was not against the manifest weight of the evidence, and Mother's fourth assignment of error is overruled.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

EILEEN T. GALLAGHER, PRESIDING JUDGE

EMANUELLA D. GROVES, J., and
EILEEN A. GALLAGHER, J., CONCUR