[Cite as *In re C.C.*, 2026-Ohio-2089.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| IN RE C.C. | : | |
| A Minor Child | : | Nos. 115746 and 115815 |
| [Appeal by Mother and Father] | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2026

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD23913851

### *Appearances:*

Edward F. Borkowski, *for appellant* Father.

David S. Bartos, *for appellant* Mother.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

ANITA LASTER MAYS, J.:

{¶ 1} In this consolidated appeal, Mother and Father of C.C., a minor child, appeal the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court'), that granted permanent custody of their minor child

("C.C.") to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "agency").[1]  After a thorough review of the record, we affirm the judgment of the juvenile court.

## I. Procedural History

{¶ 2}  On December 12, 2023, CCDCFS filed a motion for predispositional temporary custody and a complaint alleging that C.C. was dependent and requested temporary custody.  C.C. was immediately placed in the emergency custody of CCDCFS.  In March 2024, C.C. was found to be dependent and placed in temporary custody of CCDCFS.  On December 27, 2024, the order of temporary custody was extended.

{¶ 3}  On May 19, 2025, CCDCFS filed a motion to modify temporary custody to permanent custody.  On July 21, 2025, Mother filed a second extension of temporary custody or for custody to James Stamper maternal grandfather ("Grandfather").  Trial was scheduled for August 4, 2025, but rescheduled for October 9, 2025.  Trial was held on October 9, 2025, after which the juvenile court received written closing arguments from all of the parties.  On October 15, 2025, the juvenile court journalized an order that denied a second extension of temporary custody, terminated the parental rights of Mother and Father, and placed C.C. in the permanent custody of CCDCFS.  On October 24, 2025, Father filed his notice of appeal.  On November 7, 2025, Mother filed her notice of appeal.

---

[1] Appeals filed in Nos. 115746 and 115815 were consolidated for the sole purpose of disposition in a single opinion.  See motion Nos. 594585 and 594638.

**II. Facts**

{¶ 4} At trial, testimony was presented from Aailay Salters, a child-protection specialist employed by CCDCFS; Anne Christensen, foster parent of C.C.; and James Stamper, maternal grandfather of C.C., and a report was filed with the juvenile court by Thomas Kozel, guardian ad litem ("GAL") for C.C.

**A. Testimony of Aailay Salters**

{¶ 5} CCDCFS became involved after the birth of C.C. because Mother and Father did not have appropriate housing or appropriate means of support, Mother has developmental delays and an older sibling was removed from Mother's care and her parental rights were terminated. Tr. 22. An attempt was made to identify relatives as caregivers for C.C., but no relatives were found to be appropriate for C.C.'s care. Tr. 22, 23, CCDCFS trial exhibit No. 6. C.C. was placed in a foster home and has been in the same foster home since December 2023. Tr. 23-24. A case plan was developed with the goal of reunification with Mother. Tr. 25. The case plan included services to address Mother's issues with parenting, mental health, and housing. Tr. 25. Although referred to parenting services through Community Collaborative and Beech Brook, Mother failed to demonstrate or achieve sufficient benefit from the services. Tr. 25-26. Following a complete mental-health analysis through Murtis Taylor, it was determined that Mother did not possess any mental-health issues, but that Mother did possess cognitive-related issues. Tr. 27.

{¶ 6} Mother was referred to the Cuyahoga County Board of Developmental Disabilities ("CCBDD") for assistance with her cognitive issues. Tr. 27-28. CCBDD

attempted to assist Mother with her cognitive and housing issues for over one and a half years, but Mother attended only two meetings. Mother had been living with her father on occasion but left her father's home and lived with a friend and then a cousin at the time of trial. Tr. 32-33. Mother had not established a permanent residence at the time of trial. Tr. 33.

{¶ 7} Mother has attended weekly supervised visits with C.C. for nearly two years. Tr. 35, 46, and 49. Mother, during her visits with C.C., required direction and guidance to ensure that C.C.'s needs were properly met. Tr. 35-36. Mother still fails to recognize that C.C. requires attention and that only after direction did Mother react to the needs of C.C. Tr. 37-39. CCDCFS could not recommend increased visitation or the lessening of visitation restrictions by Mother and that visits with C.C. were not improving. Tr. 39-40. Reunification was not contemplated at the time of trial. Tr. 39-40. Mother's ability to safely care for C.C., even during a two-hour visit with supervision, was concerning because Mother failed to respond to C.C.'s harmful conduct such as forcefully banging his head against a wall. Tr. 40-41, 78-80. C.C.'s grandfather attended visits, but he never changed C.C.'s diaper or fed him. Tr. 72.

{¶ 8} C.C. possesses special physical needs that require him to wear ankle braces, a helmet, and he also receives occupational, physical, and speech therapy. Tr. 41-43. Mother and grandfather attended only 3 of 100 therapy sessions. Tr. 44-45, 62, 100, 101, and 103. C.C.'s foster parents take him to his weekly therapy

appointments and have also renovated their home to allow for his specialized physical needs. Tr. 44, 61. C.C. has strongly bonded with the foster parents.

{¶ 9} Since the first extension of temporary custody to CCDCFS, Mother has failed to make any significant progress in achieving the goals of the case plan. Tr. 66-68. Over a period of two years and two months, Mother has not made any progress on plan goals that would justify a second extension of temporary custody to CCDCFS. Tr. 68. Permanent custody of C.C. to CCDCFS is warranted because the Mother and Father, or any other family member, cannot provide C.C. with basic needs, medical needs, and the safety he requires. Tr. 69. Father is not capable of providing care for C.C. at this time or in the reasonable future. Tr. 69. Father has not resolved any of the case plan goals, has not engaged in and completed parenting classes, has not completed substance abuse programs, has not completed anger management classes, and has not obtained appropriate and safe housing. Tr. 69-70. Father of C.C. did not see him in 2025, because he is incarcerated. Tr. 59.

### B. Testimony of Anne Christensen

{¶ 10} Anne Christensen is one of the foster parents for C.C. and testified that she has cared for him since he was four days old. Tr. 93. C.C. has developmental issues and requires occupational, physical, and speech therapy. Tr. 94. C.C. has been exposed to the foster parent's extended family and is a very happy baby. Tr. 99. C.C. is strongly bonded to his foster parents and their extended family. Tr. 99-100. The foster parents take C.C. to his weekly occupational, physical, and speech

therapy. Tr. 44, 61. The foster parents have extensively renovated their home to accommodate C.C., and his special needs. Tr. 44, 61.

### C. Testimony of James Stamper

{¶ 11} James Stamper ("Grandfather"), the maternal grandfather of C.C., testified that he has resided in Cleveland, in a rental duplex, for three years. Tr. 107-108. The duplex contains two bedrooms. Tr. 108. Mother of C.C. is the youngest of five children. Tr. 108. Grandfather has 14 grandchildren. Tr. 109. Grandfather is employed as a coordinator for Spectrum Cable and has been employed by Spectrum Cable for 28 years. Tr. 110. Grandfather plans on retiring in four years. Tr. 110. Grandfather works Monday through Friday, 7 a.m. to 4 p.m. Tr. 110. Grandfather would visit with C.C. once a week but has discontinued visits because C.C. is afflicted with hand, foot, and mouth disease as well as pink eye. Tr. 110-111.

{¶ 12} Grandfather visits with C.C. every Friday from 10 a.m. to 12 p.m. after taking vacation time. Tr. 111. If granted legal custody of C.C., Grandfather would arrange his work schedule to allow him to for take C.C. to appointments. Tr. 111. Grandfather has necessary financial resources to care for C.C. Tr. 112. Mother has lived with Grandfather since C.C.'s birth. Tr. 112. Mother no longer lives with Grandfather, but lives with her Aunt Maria. Tr. 113. Other family members have lived in Grandfather's home that includes Mother, son-in-law and another grandchild. Tr. 113. CCDCFS has not inspected the inside of Grandfather's home. Tr. 115. Grandfather has reliable transportation. Tr. 117. Initially, Grandfather

indicated to CCDCFS that he was too old to care for C.C., but he changed his mind and indicated a willingness to care for C.C. Tr. 117-118.

{¶ 13} At this point in time, Mother is unable to care for C.C. unsupervised because of her mental, physical, and emotional state. Tr. 119. Grandfather has close relatives that can assist with the care of C.C. Tr. 125. Grandfather is aware of C.C.'s medical issues, including the need to wear a helmet and ankle braces. Tr. 126. C.C. does not have any relationships with Grandfather's close relatives. Tr. 127.

### D. Written Guardian ad Litem Report of Thomas Kozel

{¶ 14} Thomas Kozel, the GAL for C.C., submitted a written report to the juvenile court that indicated C.C. was unable to express his wishes because he was too young. Tr. 133. GAL interviewed CCDCFS employee Salters, Mother, Father, foster parents, and Grandfather. R. 187, GAL Report, pg. 1. GAL recommended that C.C. be placed in the permanent custody of CCDCFS. R. 187, GAL Report, pg. 1. The CCDCFS complaint for temporary custody and termination of parental rights is based upon concerns as to Mother's and Father's housing and parenting; concerns for Mother's cognitive delays; the removal of another child that is in the custody of children services in Erie County, PA; the fact that Father has not established paternity; and the fact that Father has substance abuse for alcohol. R. 187, GAL Report, pg. 1. Mother has failed to benefit from parenting classes or benefit from classes for her cognitive delays. R. 187, GAL Report, pg. 1. Mother has no mental health issues but does suffer from cognitive delay that affects her ability to care for C.C. R. 187, GAL Report, pg. 1. Mother needs to obtain housing, and CCDCFS is

concerned that Mother will continue to require assistance in caring for C.C. because of her cognitive delays. R. 187, GAL Report, pg. 2.

{¶ 15} C.C.'s father is homeless and stays in his truck or with friends. R. 187, GAL Report, pg. 3. Father has been charged in Lorain County, Ohio, with two counts of illegal use of a minor or impaired person in nudity-oriented material or performance and plead guilty to both offenses. R. 187, GAL Report, pg. 3. Father has made no progress with regard to the case plan, anger management, substance abuse, housing or parenting. R. 187, GAL Report, pg. 2. Father visited C.C. four times in 2024.

{¶ 16} C.C. has been placed in a two-parent foster home. R. 187, GAL Report, pg. 3. The home of the foster parents has four bedrooms, and C.C. has his own bedroom. R. 187, GAL Report, pg. 3. C.C. is growing and gaining weight. R. 187, GAL Report, pg. 3. C.C. receives physical therapy, occupational therapy, and speech therapy. R. 187, GAL Report, pg. 3. Mother is not involved in C.C.'s therapy. R. 187, GAL Report, pg. 3.

{¶ 17} Grandfather has indicated that he could not care for C.C. and that he was hoping for another relative to obtain legal custody of C.C. R. 187, GAL Report, pg. 4. Grandfather denied GAL access to his home. R. 187, GAL Report, pg. 4. GAL recommended C.C. be placed in the permanent custody of CCDCFS based upon (1) Mother's cognitive delays; (2) Mother is unable to provide for herself; (3) C.C.'s special needs will require extensive attention; (4) Mother has not attended any

therapy sessions; and (5) Father has a criminal record, has not engaged in any services, and has not visited C.C. R. 187, GAL Report, pg. 4.

**E. The Juvenile Court's Decision**

{¶ 18} On October 14, 2025, the trial court's journalized judgment entry denied Mother's motion for second extension of temporary custody and Mother's alternate motion for legal custody to maternal grandfather and granted CCDCFS's motion for permanent custody, terminating Mother's and Father's parental rights.

{¶ 19} Mother appealed (Appeal No. 115815), raising the following three assignments of error:

> 1. The trial court committed prejudicial error in denying the appellant's second motion to extend temporary custody of the child where appellant had shown significant progress in her parenting abilities with the child during her visits and the extension would serve the child's best interest.
>
> 2. The CCDCFS failed to prove that reasonable efforts were made to reunify the child with appellant where the parenting coach referred to appellant only appeared once during two years of visits and the agency made no effort to rectify that failure, to the appellant's prejudice.
>
> 3. The trial court's decision to grant permanent custody of the appellant's [child] to the CCDCFS was not supported by clear and convincing evidence and thus was not supported by the manifest weight and sufficiency of the evidence.

{¶ 20} Father also appealed (Appeals No. 115746), raising one assignment of error:

> The trial court abused its discretion by granting permanent custody of Appellant's [child] to CCDCFS against the manifest weight of the evidence.

**III. Permanent Custody**

**A. Mother's First Assignment of Error**

{¶ 21} Mother, through her first assignment of error, argues that the juvenile court erred by failing to grant Mother's second motion for extension of temporary custody. "A trial court's decision to grant or deny an extension of temporary custody to the agency is discretionary." *In re B.M.M.*, 2020-Ohio-4956, ¶ 11 (11th Dist.). "An appellate court reviews a trial court's decision to grant or deny an extension of temporary custody is for an abuse of discretion." *In re C.S.*, 2015-Ohio-5244, ¶ 8 (9th Dist.). A court abuses its discretion when exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority. *In re A.G.*, 2026-Ohio-268, ¶ 9 (8th Dist.).

{¶ 22} R.C. 2151.415(D)(2), that deals with the extension of temporary custody, provides that

> [t]he court may extend the temporary custody order of the child for an additional period of up to six months if it determines at the hearing, by clear and convincing evidence, that the additional extension is in the best interest of the child, there has been substantial additional progress since the original extension of temporary custody in the case plan of the child, there has been substantial additional progress since the original extension of temporary custody toward reunifying the child with one of the parents or otherwise permanently placing the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise placed in a permanent setting before the expiration of the additional extension period.

{¶ 23} The juvenile court had previously granted a first extension of temporary custody. R. 138. Salters, a child-protection specialist employed by CCDCFS, testified that Mother has not shown any progress that justified a second

extension based upon reunification. Tr. 67-68. In addition, the juvenile court specifically found that Mother had not made substantial progress on her case plan, as required by R.C. 2151.415(D)(2), and thus a second extension of temporary custody was not in the best interest of the child. R. 221. *In re A.N.*, 2026-Ohio-939, ¶ 52 (8th Dist.); *In re A Minor Child*, 2019-Ohio-4788, ¶ 44 (8th Dist.). We find Mother's first assignment of error not well taken.

### B. Mother' Second Assignment of Error

{¶ 24} Mother, through her second assignment of error, argues that CCDCFS did not make reasonable efforts to reunite C.C. with Mother. A review of the record clearly indicates that the juvenile court found that reasonable efforts were made to reunite C.C. with Mother: (1) at the time of initial removal of C.C. from Mother's custody and predispositional temporary custody awarded to CCDCFS in December 2023, R. 5; (2) at the time temporary custody was awarded to CCDCFS in March 2024, R. 98; and (3) at the time when the first extension of temporary custody extension was granted in December 2024, R. 138. Further, the record demonstrates that sufficient testimony was adduced at trial to support the juvenile court's finding that reasonable efforts were made to reunite C.C. and Mother. Tr. 25-29, 33-36. The failure of Mother to follow the case plan developed for her and other failures of Mother to obtain stable housing and treat her developmental issues cannot be employed to argue that reasonable efforts were not made by CCDCFS to provide for reunification. *See In re Ky.D.*, 2024-Ohio-3198 (8th Dist.). Mother's second assignment of error is not well taken.

### C. Mother's Third Proposed Assignment of Error and Father's Sole Assignment of Error.

{¶ 25} Having a common basis in law and fact, we shall consider Mother's third assignment of error and Father's sole assignment of error simultaneously.

{¶ 26} Mother, through her third assignment of error, argues that the juvenile court's judgment that terminated her parental rights and granted permanent custody of C.C. to CCDCFS, is against the manifest weight of the evidence and not supported by sufficient evidence. Father, through his sole assignment of error, argues that the termination of his parental rights and the award of permanent custody to CCDCFS is against the manifest weight of the evidence.

#### 1. First Prong – R.C. 2151.414(B)

{¶ 27} The Supreme Court of Ohio has stated "that the sufficiency-of-the evidence and/or manifest-weight-of-the-evidence standards of review are the proper appellate standards of review of a juvenile court's permanent-custody determination, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 11. Although sufficiency and manifest weight are distinct legal concepts, a finding that a judgment is supported by the manifest weight of the evidence necessarily includes a finding that sufficient evidence supports the judgment. *In re R.M.*, 2024-Ohio-1885, ¶ 46 (8th Dist.); *In re P.S.*, 2023-Ohio-144, ¶ 30 (8th Dist.), citing *In re C.N.*, 2015-Ohio-2546, ¶ 9 (10th Dist.), citing *State v. Howze*, 2013-Ohio-4800, ¶ 10. (10th Dist.).

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the

evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id*. at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*In re Z.C.* at ¶ 14.

{¶ 28} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (e), and (2) permanent custody is in the best interest of the child. *In re S.H.*, 2012-Ohio-4064, ¶ 27 (8th Dist.). "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established." *In re Y.V.*, 2011-Ohio-2409, ¶ 13 (8th Dist.), quoting *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954).

{¶ 29} When determining the child's best interest pursuant to R.C. 2151.414(D)(1), courts analyze the following factors: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and

whether such a placement can be achieved without permanent custody; and (5) whether any of the factors in divisions R.C. 2151.414(E)(7) to (11) apply.

{¶ 30} The initial requirement in considering permanent custody to CCDCFS involves whether any of the conditions under R.C. 2151.414(B)(1)(a) through (e) have been established. Herein, the juvenile court found that pursuant to R.C. 2151.414(B)(1)(d), C.C. had been in the custody of CCDCFS for 12 or more months of a consecutive 22-month period. R. 221, Tr. 24, Tr. 61. "Only one of the factors must be present to satisfy the first prong of the two-part analysis for granting permanent custody to an agency." *In re D.H.*, 2022-Ohio-2780 ¶ 27 (8th Dist.), citing *In re L.W.*, 2017-Ohio-657, ¶ 28 (8th Dist.).

{¶ 31} In addition, the juvenile court, in the judgment that terminated Mother's and Father's parental rights, found that multiple factors under R.C. 2151.414(E) were present that prevented placement with Mother and Father:

> The Court finds by clear and convincing evidence that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent, pursuant to O.R.C. 2151.414(E):
>
> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent(s) (*Mother and Father*) have failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.
>
> (2) The chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent *(Mother)* that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.

(10) The parent *(Father)* has abandoned the child.

(11) The parent *(Mother)* has had paternal rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Ohio Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. *See Exhibit 6.*

(13) The parent *(Father)* is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing for the child.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the Court finds relevant: *Father's criminal convictions as evidenced in Exhibits 9, 11, 12, 13, 14-15).*

(Emphasis in original.) *In re C.C.*, Cuyahoga J.C. No. AD23913851 (Oct. 14, 2025).

{¶ 32} Clear and convincing evidence supports the juvenile court's findings under R.C. 2151.414(B)(1)(a) and 2151.414(B)(1)(d). The first prong of the termination of parental rights analysis has been met.

**2. Second Prong – Best Interest of the Child**

{¶ 33} Pursuant to the second prong of R.C. 2151.414, the juvenile court must then consider the factors contained in R.C. 2151.414(D) to determine, by clear and

convincing evidence, whether it is in the best interest of the child to grant permanent custody to CCDCFS.

{¶ 34} The juvenile court, in determining the best interest of C.C. under R.C. 2151.414(D)(1), is required to consider all relevant factors, including but not limited to (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents, and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors in R.C. 2151.414(E)(7) through (11) are applicable.

{¶ 35} The juvenile court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent-custody determination; however, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 2006-Ohio-5513, ¶ 56. Moreover, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re S.C.*, 2015-Ohio-2410, ¶ 30 (8th Dist.), citing *In re Moore*, 2000 Ohio App. LEXIS 3958 (8th Dist. Aug. 31, 2000), citing *In re Shaeffer Children*, 85 Ohio App.3d 683 (3d Dist. 1993).

{¶ 36} R.C. 2151.414(D)(1) does not require a juvenile court to expressly discuss each of the best-interest factors in R.C. 2151.414(D)(1)(a) through (e).

"Consideration is all the statute requires." *In re A.M.*, 2020-Ohio-5102, ¶ 31. As previously stated, only one factor needs to be resolved in favor of permanent custody in order to find that permanent custody is in the child's best interest. *In re M.C.*, 2026-Ohio-1051, ¶ 41 (8th Dist.).

{¶ 37} Herein, the juvenile court considered the following factors under R.C. 2151.414(D)(1) and indicated that

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, and foster caregivers and out-of-home providers, and any other person who may significantly affect the child. *The child has the strongest bond with his caregivers. While mother and maternal grandfather visit with the child, and the parties agree that they love the child, the testimony shows that it doesn't appear to affect the child when he has to leave the visits and that he appears to be more attached to the caregivers. Additionally, Mother's exhibits, and the testimony of the case worker, shows the child having more of an attachment to the caseworker and seeking comfort from her when sad as opposed to seeking comfort from mother or grandfather. Child does not interact much with or have a bond with father.*
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child. *The child is too young to express his wishes. GAL recommends permanent custody.*
>
> (c) The custodial history of the child, including whether the child has been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period. *The child has been in Agency custody for the past 22 months, since he was four days old.*
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody. *The child deserves a safe, stable, and secure home environment where all of his basic needs and medical needs can be met and he can thrive. This cannot be achieved with either parent as the cause for removal has not been remedied (see the E factors found below). The child has been in the Agency's custody for two years and*

*throughout this time, maternal grandfather has repeatedly indicated that he cannot care for the child, he has not made his home available for the Agency to investigate and approve, and has not made his home available for the GAL to see. Additionally, maternal grandfather's testimony shows that he does not have an understanding of the child's medical needs and how to care for those needs, and based on his testimony, his home does not seem appropriate and safe for the child.*

(e) Whether any factors in divisions (E)(7) to (11) of this section apply in relation to the parents and the child. *(E)(10) and (11) apply.*

(Emphasis in original.) *In re: C.C.,* Cuyahoga J.C. No. AD23913851 (Oct. 14, 2025).

{¶ 38} The juvenile court considered the evidence and testimony adduced at the parental rights termination hearing. Specifically, the juvenile court opined that with respect to the best interest of C.C., the following were considered: (1) C.C. has the strongest bond with the foster parents; (2) the GAL recommends permanent custody to CCDCFS; (3) C.C. has been in the Agency custody for more than 22 months, since he was four days old; (4) C.C. requires a safe, stable, and secure environment where his basic and medical needs can be met; (5) maternal grandfather has indicated, over a two-year period, that he cannot care for C.C.; (6) maternal grandfather does not possess an understanding of C.C.'s medical needs; (7) Mother and Father failed continuously and repeatedly to substantially remedy the conditions causing C.C. to be placed in the temporary custody of CCDCFS; (8) Mother has an intellectual disability that makes it impossible to provide an adequate permanent home for C.C.; (9) Father has abandoned C.C.; (10) Father is repeatedly incarcerated that prevents proper care for C.C.; and (11) Mother has had parental rights terminated with respect to a sibling of C.C.

**{¶ 39}** The juvenile court's judgment granting permanent custody of C.C. to CCDCFS demonstrates that it considered the factors contained in R.C. 2151.414(D)(1), and the juvenile court's findings are supported by sufficient competent, credible evidence. *In re M.M.*, 2024-Ohio-1885, ¶ 14 (8th Dist.). We further find that the judgment of the juvenile court, that terminated the parental rights of Mother and Father and awarded permanent custody of C.C. to CCDCFS, was not against the manifest weight of the evidence. *In re A.H.*, 2026-Ohio-467, ¶ 7 (8th Dist.); *In re. T.F.*, 2025-Ohio-5051, ¶28 (8th Dist.). Mother's third assignment of error and Father's sole assignment of error are overruled.

**{¶ 40}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR