[Cite as *In re So.P.*, 2022-Ohio-4015.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE SO.P., ET AL. :

Minor Children :

                                    No. 111468

[Appeal by M.P., Mother] :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 10, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Court Division
Case Nos. AD-19912540, AD-19912541, AD-19912542,
and AD-19912543

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

SEAN C. GALLAGHER, A.J.:

{¶ 1} Appellant M.P. ("mother") appeals the decisions of the Cuyahoga County Court of Common Pleas, Juvenile Division, that awarded legal custody of her four minor children, So.P., J.P., Sp.P., and C.P., to their paternal aunt and uncle. Upon review, we affirm the judgment of the juvenile court in each child's case.

## I.  Procedural and Factual Background

{¶ 2}  In October 2019, the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency") filed a complaint that alleged the four children, who were born between 2007 and 2015, were abused, neglected, and dependent.  The children were committed to the emergency custody of CCDCFS on October 16, 2019.  At the adjudicatory hearing held on December 9, 2019, mother stipulated to an amended complaint that alleged in part that mother and the children's maternal grandmother had engaged in a physical altercation in the presence of the children, mother has a substance-abuse issue related to alcohol, mother relapsed after completing treatment, mother was then in residential treatment and not able to care for the children, mother needed to address a mental-health issue in order for her to provide for the children, mother was previously convicted of disorderly conduct after engaging in domestic violence, and the children's father was incarcerated in Arizona for a manslaughter conviction.  After adjudicating the children abused, neglected, and dependent, the juvenile court committed the children to the temporary custody of CCDCFS in judgment entries dated between January 2 and 7, 2020.

{¶ 3}  The juvenile court ordered two extensions of temporary custody by agreement of the parties.  On August 10, 2021, mother filed a motion for legal custody to herself.  On December 2, 2021, CCDCFS filed a motion to amend an earlier dispositional request for permanent custody to legal custody to the children's paternal aunt and uncle.  A dispositional hearing was held before a magistrate on

February 28, 2022, at which time the children had been in the temporary custody of CCDCFS for over two years.

{¶ 4} The record reflects that at the time the children were removed from mother's custody, mother had an extensive history of alcohol abuse. In 2015, mother and the children's father, now her ex-husband, were involved in a car accident resulting in another person's death and the children's father's incarceration. According to mother, "[her] entire family fell apart." Mother acknowledged she "was an emotional mess," her behavior was "out of control," and her children had witnessed her "in some conditions * * * they shouldn't have."

{¶ 5} The four children were initially placed with their maternal grandparents in Ohio, but they were eventually placed with their paternal aunt and uncle in Indiana and have remained there since February 2021. The children are doing very well in their placement and are bonded with their paternal aunt and uncle. Their basic needs are being met, they have appropriate housing, they attend school, and they are engaged in counseling.

{¶ 6} Mother's case plan objectives included addressing her substance-abuse issues and mental health. Mother was already involved in treatment when the agency became involved. From October 2019 through February 2021, Mother completed substance-abuse treatment programs, but she relapsed several times. However, mother eventually made progress. At the time of the dispositional hearing, mother had been sober for a year, she was involved in mental health counseling, she was employed, she had appropriate housing, and she was involved

with Sober Living Homes, Ohio, where she had achieved enough sobriety to be trusted as a house manager to drug test other residents.

{¶ 7} The agency recognized mother's progress, but it still had concern because the children had been out of her custody for two years and there were "still a lot of trust issues that [need] to be resolved" and there were concerns for the children's emotional well-being. It was observed that the children did not view mother as an authority figure and did not really listen to her. The social worker of record stated, "the children have witnessed mother physically fighting with their grandmother and they have experienced a lot of yelling, a lot of screaming, a lot of negative behavior." So.P., who is the oldest child, "felt blamed for everything, anything negative that happened was her fault. A lot of responsibility is put on her."

{¶ 8} A visitation schedule was in place, with weekly phone calls or FaceTime and monthly in-person visits. Mother participated in all the visits. But mother had not had visitation with or spoken to So.P. since late 2020/early 2021 because So.P. did not wish to have visitation with her mother. Mother was "trying to just respect [So.P.'s] wishes * * * and giving [So.P.] time until she's ready." Mother had some in-person visits with her other children, but the visitation was supervised by the accompanying maternal grandmother. The social worker indicated that the other children had shared wanting to be back in Ohio with their grandmother, but with mom being there, and that "there's still hesitation that mom might not be able to take care of them * * *." So.P. believed all the children should remain together.

**{¶ 9}** Mother's testimony reflects that she engaged in treatment, was receiving counseling, and had "learned a lot of good coping mechanisms and tools." She acknowledged that "it took [her] a while to get it right." She recognized issues that would need to be addressed if reunited with the children. Mother expressed remorse for her prior behavior and stated she was "willing to do whatever anyone deems necessary to build those relationships back and make [the children] trust me." She also indicated that she had the support of the maternal grandparents who live close to her. Mother stated she would like So.P. to return to her, but also recognized that So.P. wanted to be in the legal custody of the paternal aunt and uncle. Mother indicated that she had no issues with the paternal aunt and uncle and that if the children were committed to their legal custody, she would desire as much access and visitation as possible.

**{¶ 10}** The social worker believed it was in the best interest of the children to remain in the paternal aunt and uncle's home. Family counseling had not taken place between mother and the children. The agency was concerned that the children had not been in mother's care for over two years and there were "a lot of trust issues that [needed] to be resolved." The social worker felt that it is important for the children to have the opportunity to build a relationship back with their mother, rather than just "throwing them back home without any opportunity for transition, without any opportunity to rebuild the trust."

**{¶ 11}** The guardian ad litem ("GAL") for the children recommended legal custody to the paternal aunt and uncle and opined this would be in the children's

best interest. The GAL recognized the progress mother has made, but she was concerned that So.P. had not visited with mother in some time and mother only had eight or nine in-person visits with the other children over the past year. The GAL did not believe the children should be separated, and the GAL opined that returning the children to Ohio would disrupt the progress they had made.

{¶ 12} Counsel for the children indicated that So.P. did not want to be reunified with mother and did not want any access or visitation with mother. Counsel indicated the other children had each stated a desire to be reunified with their mother.

{¶ 13} The paternal aunt and uncle had executed a statement of understanding for legal custody. They affirmed their intention to become the legal custodians of the children and acknowledged their understanding of the effect of the custodianship.

{¶ 14} In timely judgment entries journalized March 25-28, 2022, the juvenile court, upon independent review, adopted the magistrate's decision and granted legal custody of each child to the paternal aunt and uncle. The juvenile court made findings that are supported by the record and found that each child's current placement was appropriate, that the child's "return to the home of Mother, at this time, will be contrary to the child's best interest[,]" and that an award of legal custody to the paternal aunt and uncle was "necessary to serve the best interests of the child." In the case of So.P., the juvenile court ordered "Mother shall have no visitation with So.P. Supervised visitation may resume as agreed upon [by] the

parties, when the child wishes to engage in visitation with her mother." In each of the other children's cases, the juvenile court ordered "reasonable parenting time" as agreed by the parties. The juvenile court had informed mother at the dispositional hearing that if the children were placed in the legal custody of the paternal aunt and uncle, mother would have certain residual rights.

{¶ 15} Mother has appealed the judgment of the juvenile court in each child's case.

## II.    Law and Analysis

{¶ 16} Mother raises two assignments of error for our review. Under her first assignment of error, mother claims that the juvenile court abused its discretion by granting the agency's motion for legal custody to relatives and that the decision was against the manifest weight of the evidence. Under her second assignment of error, mother claims the juvenile court abused its discretion by denying her motion for legal custody.

{¶ 17} Pursuant to R.C. 2151.353(A)(3), a juvenile court may award legal custody of a child who has been adjudicated abused, neglected, or dependent "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

**{¶ 18}** "Legal custody" is defined as

> a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

R.C. 2151.011(B)(21).

**{¶ 19}** Legal custody is significantly different than the termination of parental rights. Unlike an award of permanent custody that divests the natural parents of all parental rights, an award of legal custody vests in the custodian the physical care and control of the child while the natural parents retain residual parental rights, privileges, and responsibilities. *In re E.M.B.T.*, 8th Dist. Cuyahoga No. 109479, 2020-Ohio-4308, ¶ 24, citing R.C. 2151.011(B)(21), 2151.011(B)(31), and 2151.353(A)(3)(c); *see also In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 15, 17. Also, "'[u]nlike permanent custody, granting legal custody does not terminate the parent-child relationship.'" *In re E.M.B.T.* at ¶ 24, quoting *In re M.M.*, 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 7.

**{¶ 20}** "A trial court must determine the appropriateness of legal custody in accordance with the best interest of the child as supported by the preponderance of the evidence." *In re J.W.*, 8th Dist. Cuyahoga No. 108139, 2019-Ohio-3666, ¶ 15, citing *In re G.W.*, 8th Dist. Cuyahoga No. 103706, 2016-Ohio-5242, ¶ 21. "'Preponderance of the evidence' means 'evidence that's more probable, more persuasive, or of greater probative value.'" *In re C.V.M.*, 8th Dist. Cuyahoga No.

98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52.

{¶ 21} "[T]he best interests of the child are paramount in any custody case," and courts are to liberally interpret the statutes under R.C. Chapter 2151 "to provide for the care and protection of the child * * *." *In re A.B.*, 110 Ohio St.3d 230, 2006-Ohio-4359, 852 N.E.2d 1187, ¶ 32, citing R.C. 2151.01(A). The factors listed under R.C. 2151.414(D) may be instructive when determining the child's best interest in a legal custody case. *In re V.P.*, 8th Dist. Cuyahoga No. 109649, 2020-Ohio-5626, ¶ 32, citing *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16. Those factors include the following: the interaction and interrelationship of the child with the child's parents, relatives, and caregivers; the wishes of the child; the custodial history of the child; and the child's need for a legally secure placement. R.C. 2151.414(D). In custody matters, a juvenile court has broad discretion in making dispositional orders in the best interest of the child. *See Reynolds v. Goll*, 75 Ohio St.3d 121, 124-125, 661 N.E.2d 1008 (1996). Ultimately, the natural rights of a parent are always subject to the ultimate welfare of the child, which is the controlling principle to be observed. *In re B.C.*, 141 Ohio St. 3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 20, citing *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 22} In this case, the record demonstrates that despite her initial relapses, mother has made progress with her sobriety and mental health. However, concerns remained for the emotional welfare of the children, who experienced a lot on account of mother's past behavior and have a father who is incarcerated. So.P. has not

wanted any contact with mother. Although the other children have had positive interactions with mother and their counsel expressed their desire to be reunified with her, the social worker observed that the children do not view mother as an authority figure, they do not really listen to her, and they had hesitation that mom might not be able to take care of them. Also, mother's visitation with the children in Indiana has been supervised by the maternal grandmother and family counseling had not taken place. As expressed by the social worker, "the concern is the relationship [between the children and mother] and without having that being addressed, it's highly likely that it will increase trouble for both the kids and for the mother." Mother acknowledged that she still needs to build trust with the children and that there is still a need for family counseling. At the time of the dispositional hearing, the children had not been in mother's custody for two years. The children have stability in the paternal aunt and uncle's home, and the GAL believed returning the children to Ohio would disrupt the progress they had made.

{¶ 23} The juvenile court reviewed the testimony provided and included factual findings in its decisions. The juvenile court recognized that mother has made progress, has appropriate housing, is employed, and can meet the basic needs of the children. However, the juvenile court also recognized that mother had not engaged in family counseling with the children and that over the past year, So.P. refuses to visit with mother, and mother has had limited, supervised visits with the other children. The juvenile court further recognized that the children were placed together with their paternal aunt and uncle, they are bonded with these relatives,

they are enrolled in school, they are receiving counseling, and they are doing well. The juvenile court considered the expressed wishes of the children, as well as the recommendation of the guardian ad litem, who recommended the children remain together in the legal custody of their paternal aunt and uncle.

{¶ 24} Despite mother's progress, the focus must remain on the welfare of the children. In each child's case, the juvenile court independently reviewed the matter, considered relevant best-interest factors, made findings that are supported by the record, and concluded the child's return to mother's home, at this time, would be contrary to the child's best interest and that an award of legal custody to the paternal aunt and uncle would serve the best interest of the child. Upon careful review, we find that the juvenile court did not abuse its discretion and that the judgment in each child's case was supported by the preponderance of the evidence. We are not persuaded by mother's arguments otherwise.

{¶ 25} We also recognize that the juvenile court ordered reasonable parenting time with J.P., Sp.P., and C.P. and allowed supervised visitation to resume with So.P. when the child so wishes. Because this is an award of legal custody, mother retains residual parental rights, privileges, and responsibilities. We commend mother for the positive steps she has taken and strongly encourage that she engage in family counseling with the children. An award of legal custody does not permanently foreclose a parent's right to regain custody in accordance with the law in the future. *In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, at ¶ 23, citing R.C. 2151.42.

{¶ 26} The assignments of error are overruled.

{¶ 27} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

SEAN C. GALLAGHER, ADMINISTRATIVE JUDGE

KATHLEEN ANN KEOUGH, J., CONCURS;
CORNELIUS J. O'SULLIVAN, JR., J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

CORNELIUS J. O'SULLIVAN, JR., J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 28} Respectfully, I concur in part and dissent in part. I concur in part with the majority's judgment as it relates to So.P. — that legal custody of her should be granted to the paternal aunt and uncle. I dissent as to the majority's judgment that legal custody of the other three children, J.P., Sp.P., and C.P., should be granted to the aunt and uncle.

{¶ 29} The juvenile court has exclusive jurisdiction to determine the custody of any child not a ward of another court of this state. R.C. 2151.23(A)(2). "It is well

recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), citing *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). Thus, "the overriding principle in custody cases between a parent and nonparent is that [biological] parents have a fundamental liberty interest in the care, custody, and management of their children." *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16, citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). "This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution." *In re Hockstok* at *id.*, citing *Santosky* at *id.*, and *In re Shaeffer Children*, 85 Ohio App.3d 683, 689-690, 621 N.E.2d 426 (3d Dist.1993). "Since parents have constitutional custodial rights, any action by the state that affects this parental right, such as granting custody of a child to a nonparent, must be conducted pursuant to procedures that are fundamentally fair." *In re Hockstok* at *id.*, citing *Santosky* at 754, and *In re Adoption of Mays*, 30 Ohio App.3d 195, 198, 507 N.E.2d 453 (1st Dist.1986).

{¶ 30} The juvenile court found that appellant had made "some progress" on her case plan, but that "progress has not been made in alleviating the cause for the removal of the child[ren] from the home." I disagree.

{¶ 31} Mother's underlying issue in this case was alcohol abuse that was brought on by the trauma associated with her husband killing a person while driving

intoxicated and subsequently being imprisoned. Appellant acknowledged that her life spiraled out of control in the aftermath of these events.

{¶ 32} However, she did what was required of her to address her alcohol abuse. The juvenile court noted that she "completed on her own inpatient and outpatient treatment"[1] and that, at the time of trial, she had been sober for over one year. Further, she was employed, had appropriate housing, and was involved with Sober Living Homes, Ohio. The owner of Sober Living Homes, Ohio testified that appellant was singularly focused on getting sober so that she could regain custody of her children. Appellant "excelled" in the program, and the owner made her "house mother" because she was so effective on keeping the participants in the program "on track." The juvenile court also found that appellant was able to meet the basic needs of the children.

{¶ 33} Appellant testified that she learned coping skills and tools through counseling and expressed remorse for her prior behavior. She testified that she is "willing to do whatever anyone deems necessary to build * * * relationships back [with her children]" and gain their trust. So.P. did not want to be reunified with appellant, but the other children did.

{¶ 34} Part of the juvenile court's reasoning in denying appellant's request for legal custody was that she had not engaged in family counseling with the children. The record demonstrates that appellant was willing to engage in family

---

[1] The record demonstrates that CCDCFS did not refer appellant for substance abuse services because at the time it became involved with her she had already been engaged in services on her own accord.

counseling — indeed she repeatedly requested it — but CCDCFS never arranged it. I believe a significant roadblock to arranging that was, and will be going forward, the physical distance between appellant, who is in Ohio, and the children, who are in Indiana.

{¶ 35} The denial was also based on the court's determination that the children were bonded to their aunt and uncle and doing well in their placement at their home. I believe that using that determination to deny appellant custody amounts to the court using the initial award of custody against appellant. *See In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, 843 N.E.2d 1188, ¶ 29 (Pfeifer, J., dissenting) ("[T]he magistrate used the initial award of custody against [appellant father] when he stated that [the child] 'could face confusion and/or loss of security and stability [if legal custody were taken from the [custodians] and awarded to [father]].'") In my opinion, that reasoning ignores appellant's constitutional rights to custody of her biological children and demonstrates that her rights have not been appropriately considered at any stage of the proceedings.

{¶ 36} The record demonstrates that the children were bonded with appellant prior to the tragic set of circumstances at play here and the three younger ones expressed their desire to be reunited with her. The agency's failure to put a "preferred" program in place should not work to keep the family apart.

{¶ 37} For the reasons discussed above, I concur in part and I dissent in part. I would affirm the juvenile court's decision as it relates to So.P. and would overrule it as it relates to J.P., Sp.P., and C.P.