[Cite as *In re L.W.*, 2026-Ohio-2415.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE L.W., ET AL. | : | |
| | | No. 116067 |
| A Minor Child | : | |
| | | |
| [Appeal by Mother, La.W.] | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23913200, AD23913201, AD23913202, and AD24911478

---

### *Appearances:*

Edward F. Borkowski, Jr., *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Appellant-Mother appeals the juvenile court's decision to grant permanent custody of minor child D.C. to the Cuyahoga County Division of Children

and Family Services and legal custody of children L.W., Al.J., and An.J. to their paternal grandmother.[1]  For the reasons that follow, we affirm.

{¶ 2}  In November 2023, CCDCFS filed a complaint alleging that the older children were abused, neglected, and dependent and requested a disposition of temporary custody to the agency.  The older children were subsequently placed in the agency's temporary custody.  Paternity was established.[2]  A case plan was developed for both parents with the goal of reunification.

{¶ 3}  In September 2024, CCDCFS moved to modify temporary custody to permanent custody for the older children.  The motion was later amended to request that the children be placed in the legal custody of their paternal grandmother.  In September 2025, Mother moved for the older children to be placed in the legal custody of their maternal grandmother.

{¶ 4}  As to D.C., CCDCFS filed a complaint in October 2024 alleging that D.C., then a newborn, was dependent and requested a disposition of temporary custody to CCDCFS.  Paternity was never established.  He was found to be dependent and was placed in the agency's temporary custody.  In August 2025, CCDCFS moved to modify temporary custody to permanent custody.

---

[1] At times, D.C. will be referred to as "the youngest child"; L.W., Al.J., and An.J. will collectively be referred to as "the older children"; and the Cuyahoga County Division of Children and Family Services will be referred to as "CCDCFS" or "the agency."

[2] Father was present and represented by counsel at trial but is not a party to this appeal; therefore, discussion as to Father is limited.

**{¶ 5}** The matter proceeded to trial for all four children at which the following pertinent information was presented. As part of Mother's case plan services, she was referred for assistance with her housing situation because her house was in unlivable condition. At the time of trial, Mother had ameliorated this issue. Mother was also referred for mental-health services because of allegations that she had sexually abused her oldest child, who had previously been placed in the legal custody of an interested individual.[3] Mother never completed the mental-health assessment or followed up with the referral.

**{¶ 6}** With regard to Mother's behavioral concerns, the family's case worker Re'Gine Wells ("Wells"), described disclosure by the older children of multiple incidents during which Mother was intoxicated and engaged in inappropriate sexual behavior with at least two of the older children. Wells observed that Mother

> continues to display concerns in regard to her mental health, just specifically in the way that she responds to concerns involving her kids, when it comes to the sex abuse allegations, continued disclosures from the children, discussing these concerns in semi-annual reviews, minimization of these concerns, all continues to have, you know, concerns of her mental health.

(Tr. 25.)

**{¶ 7}** Given these ongoing concerns, Wells testified that Mother had not made significant progress on her mental-health objective.

**{¶ 8}** Mother was referred for a substance-abuse assessment. Wells "observed substance abuse paraphernalia in the home, including marijuana and

---

[3] The oldest child is not one of the children involved in this appeal but will be discussed when appropriate.

alcohol bottles throughout the house." (Tr. 21.) Mother also "self-reported that she used marijuana and alcohol to treat some of her, I guess, physical health issues, pain, specifically." (Tr. 22.) Mother completed her assessment and was recommended for intensive outpatient treatment ("IOP"). Mother completed the initial program but failed to submit to random drug testing as required by her case plan. In June 2025, Mother reengaged with IOP and tested positive for marijuana. She completed IOP in November 2025, but remained uncooperative with her drug screens. Because Mother had failed to submit to weekly drug screen requests, CCDCFS had not established a sobriety date for her. Thus, according to the agency, Mother had not made significant progress on her substance-abuse objective.

{¶ 9} Mother was referred for domestic-violence services after she disclosed that she had been victimized by the older children's father. Mother completed these services. However, as of the time of trial, Mother had been indicted on several counts of rape and other crimes relating to the alleged sexual abuse of her oldest child. Mother had a no-contact order as to that child.

{¶ 10} Mother was scheduled for weekly supervised visits with the children. One of the older children stopped attending visits for a time after his disclosure of inappropriate sexual conduct by Mother and, as of the time of trial, rarely attended visits. Wells supervised Mother's visits with the children and testified that the children enjoyed seeing their mother during visits. However, Wells also observed that Mother

lacks the willingness to be a parent to her children. It's very apparent that [she] is used to others assuming the parental role of her children. When it comes to redirecting or even intervening in unsafe behaviors of her children, it's just not there. Specifically, with [the youngest child], there has been incidents in which her other children, so [one of the older children], who attends the visits regularly, is engaging in unsafe behaviors with [the youngest child], and [Mother] won't intervene. There's other people who are around, who are supervising the visits, who have to say something, who have to redirect the children. Even still, [Mother] doesn't redirect. And so, the parenting abilities are not there or she's unwilling.

(Tr. 34.)

{¶ 11} The father of the three oldest children agreed with his children being placed in the legal custody of their paternal grandmother. He was unwilling to engage with CCDCFS and there remained ongoing and unresolved concerns regarding his mental health. Again, paternity was not established for the youngest child.

{¶ 12} Mother wanted the children's maternal grandmother to have legal custody of the older children. Maternal grandmother, who testified at trial, told the court she had visited with the children only once during the pendency of the proceedings, during which it was observed that she had little interaction with the children. Additionally, according to Wells, maternal grandmother would not pass a kinship investigation because she herself had multiple children removed from her care.

{¶ 13} Maternal grandmother testified that prior to the removal of the older children, she would see them every day or two. She testified that she is disabled and suffers from heart and breathing problems. She acknowledged that her own

children had been removed from her care and that she had been reunified with some, but not all, of them. She admitted that between 1999 and 2013, the agency had conducted approximately 40 investigations into her family.

{¶ 14} The older children had been living with their paternal grandmother since their initial removal. They were "well-bonded" with her and "really enjoy being in the care of their grandmother," where they feel comfortable and safe. (Tr. 36-37.) The older children received trauma-focused mental-health services, and their paternal grandmother was able to meet their basic needs.

{¶ 15} The youngest child had been with a single caregiver since his removal and was well-bonded to his caregiver. During the pendency of the proceedings, CCDCFS attempted to identify appropriate relatives for possible placement of D.C., but those efforts were unsuccessful. The guardian ad litem ("GAL") recommended that permanent custody be granted for the youngest child, noting that Mother "has not made significant progress on her case plan in addressing her mental health and her pending criminal matter." GAL report.

{¶ 16} At the time of the trial, the older children were 12, 13, and 15 years old. They were represented by counsel, who informed the trial court that they wished to be placed in the legal custody of their paternal grandmother. The trial court conducted an in camera interview with each older child. The GAL recommended the older children be placed in their paternal grandmother's legal custody, noting in his written report that "[t]he [older children] have been placed with Paternal Grandmother for approximately the last two (2) years. The children

are . . . doing well academically. The children are in a safe and healthy home environment and are doing well in their present placement." GAL report. At the conclusion of trial, the GAL confirmed that his recommendation remained unchanged as to all four children.

{¶ 17} The juvenile court ordered the older children placed in the legal custody of their paternal grandmother and ordered the youngest child be placed in the permanent custody of the agency.

{¶ 18} Mother appeals, raising the following assignments of error for our review:

> I. The trial court abused its discretion by granting permanent custody of appellant's child to CCDCFS against the manifest weight of the evidence.

> II. The trial court erred by denying mother's motion for legal custody of the older children to maternal grandmother, and by granting the agency's motion for legal custody to paternal grandmother.

{¶ 19} In the first assignment of error, Mother argues that the trial court's decision to commit the youngest child to the permanent custody of the agency was against the manifest weight of the evidence.

{¶ 20} Under R.C. 2151.414(B)(1), a juvenile court may grant a public children-services agency's motion for permanent custody if it determines, by clear and convincing evidence, that permanent custody is in the best interest of the child and, as it applies to this case, "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)(1)(a).

{¶ 21} "'Clear and convincing evidence' is that 'measure or degree of proof' that 'produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 22} A juvenile court's decision to grant permanent custody of a child to CCDCFS is reviewed under sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards of review depending on the nature of the arguments presented. *In re Z.C.* at ¶ 11; *In re T.W.*, 2026-Ohio-124, ¶ 44 (8th Dist.). Here, Mother contends that the trial court's decision was against the manifest weight of the evidence.

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.

*In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20-21.

{¶ 23} The juvenile court found by clear and convincing evidence that D.C. could not be placed with Mother within a reasonable time or should not be placed with Mother, based on findings pursuant to R.C. 2151.414(E)(1) and (16), which provide:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed

continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.

. . .

(16) Any other factor the court considers relevant.

As to (E)(16), the court relied on the "agency's involvement with the [youngest child's] siblings, the in-camera interview with those siblings, and the pending criminal charges against mother in which [the oldest child] is the listed victim." (Journal Entry, Jan 9. 2026).

{¶ 24} The court further found:

CCDCFS became involved with the family in May of 2023 for neglect. The oldest sibling . . . was ultimately placed in the legal custody of an interested individual. In September of 2023, there was physical abuse by the mother against [the oldest child]. In November of 2023, there were disclosures of sexual and physical abuse by mother against the children. The [older children] were removed from the mother's care and custody in November of 2023, and they have been in agency custody continuously since then. There were also concerns about a lack of basic needs and housing.

The case plan for the mother includes concerns for housing, basic needs, mental health, substance abuse, and domestic violence. The mother has not complied with the case plan and has not remedied the conditions causing the removal of the children. The case worker credibly testified about ongoing concerns with the mother.

More significantly are the unresolved criminal charges for the mother for rape, sexual battery, and disseminating matter harmful to juveniles . . . . One of the children is the alleged victim in this indictment.

*Id.*

{¶ 25} The record demonstrates that following the removal of the three oldest children, a case plan was developed and implemented to promote the

permanency plan of reunification.  This case plan remained in place after the birth and removal of the youngest child.

{¶ 26} Mother was referred for mental-health services because of the allegations of sexual abuse "as well as some of [her] erratic behaviors."  (Tr. 20-21.) Despite having been referred, Mother never completed a mental-health assessment. Mother was again referred for mental-health services in late 2025, but declined the referral.  With regard to Mother's behavioral concerns, the case worker explained that she interacted with Mother on a weekly basis, and that throughout the case, Mother continued to display concerns in regard to her mental health.  Wells described disclosure of several incidents during which Mother was intoxicated or under the influence of drugs and engaged in inappropriate sexual behavior with the older children.  As Wells explained, Mother minimized the agency's concerns with regard to these allegations; given these ongoing concerns, the agency concluded that Mother had not made significant progress on her mental-health objective.

{¶ 27} Mother was referred for a substance-abuse assessment.  Wells testified she had observed marijuana and alcohol bottles throughout the house and Mother self-reported use of marijuana and alcohol to treat physical health issues. Mother completed the assessment in September 2024 and was recommended for IOP services, which she completed.  Mother reentered in June 2025, at which time that she tested positive for marijuana.  Mother completed the program, which included IOP drug screens.  However, her case plan also required she submit to weekly drug screens for the agency, which she failed to do.  Because Mother failed

to submit to these weekly drug screen requests, CCDCFS was unable to establish a sobriety date for her and concluded she had not made substantial progress on that objective.

{¶ 28} Although the record reflects that Mother had obtained suitable housing, completed domestic-violence classes, and participated in IOP after more than two years of services, Mother was not in a position where she could have D.C. returned to her care and custody — and there is nothing in the record to suggest that she would be in a position to do so at any reasonable time in the future. Despite Mother's claims of compliance with case-plan services, the court found that Mother was noncompliant and there is ample evidence in the record to support that finding.

{¶ 29} Next, we consider whether a grant of permanent custody was in D.C.'s best interest. R.C. 2151.414(D) sets forth the factors a juvenile court is to consider in determining what is in the best interest of a child. R.C. 2151.414(D)(1) states that the court "shall consider all relevant factors," including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period . . . .

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child.

{¶ 30} The best-interest determination focuses on the child, not the parent. *In re N.B.*, 2015-Ohio-314, ¶ 59 (8th Dist.). Although the juvenile court is required to consider each relevant factor in determining what is in a child's best interest, no one factor is required to be given greater weight than the others. *In re A.L.*, 2024-Ohio-1992, ¶ 31 (8th Dist.), citing *In re Schaefer*, 2006-Ohio-5513. Further, only one of the factors needs to be resolved in favor of permanent custody to find that permanent custody is in the child's best interest. *In re R.M.*, 2024-Ohio-1885, ¶ 60 (8th Dist.).

{¶ 31} Mother contends that the juvenile court's best-interest determination was against the manifest weight of the evidence because the agency did not bring the child to visit with her and therefore they did not have time to bond; the GAL's recommendation for permanent custody and D.C.'s custodial history should not be factors given the child's young age; Mother was able to provide a secure placement for him; and there was no evidence to support the court's finding that a factor in R.C. 2151.414(E)(7) to (11) applied.

{¶ 32} R.C. 2151.414(D)(1)(a) relates to the interaction and interrelationship of the child with various significant individuals in the child's life, including parents, siblings, relatives, and foster caregivers. Although it is apparent Mother loves her

child, the child has been in agency custody since he was born and was thriving in his placement. Mother's claim that she was not able to visit consistently with D.C. is not borne out by the record; Wells testified that D.C. regularly attended supervised visits with Mother.

{¶ 33} Under R.C. 2151.414(D)(1)(b), the juvenile court was to consider the child's wishes as expressed directly or through his GAL. At the time of trial, D.C. was only a year old and therefore too young to express his wishes in regard to permanent custody. Contrary to Mother's assertion that the court should not consider the GAL's recommendation because of the child's young age, "'[t]he juvenile court properly considers the GAL's recommendation on the permanent-custody motion as part of the R.C. 2151.414(D)(1)(b) analysis where the children are too young to express their wishes.'" *In re R.A.*, 2021-Ohio-4126, ¶ 52 (8th Dist.), quoting *In re B/K Children*, 2020-Ohio-1095, ¶ 45 (1st Dist.). The GAL recommended permanent custody to CCDCFS.

{¶ 34} R.C. 2151.414(D)(1)(c) is relative to D.C.'s custodial history; the child had been in agency custody since birth and it is a proper consideration for the juvenile court even given his young age. R.C. 2151.414(D)(1)(d) relates to D.C.'s need for a legally secure placement and whether that can be achieved without a grant of permanent custody. The juvenile court found that D.C. "cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent." The record supports that finding.

{¶ 35} Finally, Mother contends that there was no evidence that any of the R.C. 2151.414(E)(7) — (11) factors applied. This is true; however, we are mindful that the juvenile court only needed to find that one of the R.C. 2151.414(D)(1) factors applied.

{¶ 36} As discussed, the testimony elicited at trial demonstrated that Mother had not fully satisfied the objectives of her case plan and has not proven that she can provide a stable environment for D.C. The court was also guided by the GAL's recommendation, who spoke on D.C.'s behalf and recommended that it was in the child's best interest to grant the agency permanent custody.

{¶ 37} Accordingly, the juvenile court's termination of parental rights and award of permanent custody of D.C. to CCDCFS is supported by clear and convincing evidence in the record.

{¶ 38} The first assignment of error is overruled.

{¶ 39} In the second assignment of error, Mother challenges the court's decision to place the older children in the legal custody of paternal grandmother. Mother contends the children should have been placed in the legal custody of maternal grandmother.

{¶ 40} Under R.C. 2151.353(A)(3), a juvenile court may award legal custody of a child who has been adjudicated abused, neglected, or dependent "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in

a complaint or motion filed prior to the dispositional hearing by any party to the proceedings."

{¶ 41} "[L]egal custody is significantly different than the termination of parental rights." *In re So.P.*, 2022-Ohio-4015, ¶ 19 (8th Dist.). Unlike a case in which parental rights are terminated, when a parent loses legal custody of his or her child, the parent "retains residual parental rights, privileges and responsibilities and is not permanently foreclosed from regaining custody." *In re M.S.*, 2019-Ohio-5128, ¶ 32 (8th Dist.), citing *In re T.R.*, 2015-Ohio-4177, ¶ 32 (8th Dist.).

{¶ 42} When a juvenile court considers an award of legal custody following an adjudication of abuse, neglect, or dependency, "'it does so by examining what would be in the best interest of the children based on a preponderance of the evidence.'" *In re T.R.* at ¶ 44, quoting *In re M.J.M.*, 2010-Ohio-1674, ¶ 11, 14 (8th Dist.). A "preponderance of the evidence" means evidence that is "'more probable, more persuasive, or of greater value.'" *In re C.V.M.*, 2012-Ohio-5514, ¶ 7 (8th Dist.), quoting *In re D.P.*, 2005-Ohio-5097, ¶ 52 (10th Dist.).

{¶ 43} The decision whether to grant or deny a request for legal custody is within the sound discretion of the juvenile court. When reviewing a juvenile court's "'ultimate decision on whether the facts as determined would make it in the child's best interests to be placed in legal custody,'" we apply an abuse-of-discretion standard. *In re W.A.J.*, 2014-Ohio-604, at ¶ 2 (8th Dist.), quoting *In re G.M.*, 2011-Ohio-4090, ¶ 14 (8th Dist.). An abuse of discretion occurs when a court exercises

its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 44} There is no specific test that must be applied or considered when determining what is in a child's best interest on a motion for legal custody. *In re T.R.* at ¶ 48. Unlike permanent custody cases in which the juvenile court must consider the factors outlined in R.C. 2151.414(D), R.C. 2151.353(A)(3) does not independently specify the factors to be considered in deciding what is in a child's best interest on a request for legal custody. *In re G.M.* at ¶ 15. That said, "assuming the person seeking legal custody has complied with any statutory requirements, the court's authority to award legal custody under this statute 'is limited only by the best interest of the child.'" *In re K.L.V.W.*, 2023-Ohio-1287, ¶ 28 (8th Dist.), quoting *In re W.A.J.* at ¶ 3.

{¶ 45} The record reflects that a case plan was developed for Mother to address substance abuse, domestic violence, mental health, housing, and the basic needs of the older children. As to her mental health, Mother never completed a mental-health assessment. She remained under indictment for sexually violent offenses against her oldest child and the older children had also disclosed sexual abuse. Mother also did not benefit from substance-abuse services. Although Mother completed IOP twice, she failed to complete weekly drug screens as set forth in her case plan and the agency had no established sobriety date for her. Moreover, Mother was intoxicated or under the influence during at least two of the alleged instances of sexual abuse of the older children.

{¶ 46} Although maternal grandmother testified that she wanted legal custody of the older children, Wells testified that maternal grandmother would not pass a kinship study because of her own extensive involvement with the agency.

{¶ 47} The older children had been residing with paternal grandmother since their removal and informed the court, via counsel, that they wished to remain in her care. The children were well-bonded with paternal grandmother, received trauma-informed counseling, were having their basic needs met, and felt safe in her care.

{¶ 48} Considering the above, the juvenile court's decision was supported by a preponderance of the evidence. The court did not abuse its discretion in placing the older children in the legal custody of paternal grandmother.

{¶ 49} The second assignment of error is overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
KATHLEEN ANN KEOUGH, J., CONCUR